UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI

| | |
|---|---|
| MINDBASEHQ LLC,<br><br>              Plaintiff,<br><br>  vs.<br><br>GOOGLE LLC,<br><br>              Defendant. | Case No. 1:20-cv-24742-BB |

**GOOGLE LLC'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**

    Defendant Google LLC ("Google") moves to transfer this patent infringement action brought by Plaintiff MindbaseHQ LLC ("Mindbase") to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  Google respectfully requests that this motion be granted for the reasons stated below.

**MEMORANDUM OF LAW**

**INTRODUCTION**

    The only allegations that tie this case to the District are Mindbase's incorporation in Florida, an inventor's residence, and a small Google office here.  The material facts—including, most importantly, the center of gravity of the alleged acts of infringement—weigh strongly in favor of transfer to the Northern District of California.  Google has been headquartered in the Northern District of California for over two decades and employs tens of thousands of people in that district, including the majority of those involved in the services accused of infringement.  This action presents no such ties to this District.  Accordingly, Google requests that the Court transfer this action to the Northern District of California.

/ / /

/ / /

## BACKGROUND

In its Amended Complaint,[1] Mindbase alleges that Google infringes U.S. Patent Nos. 6,510,433 (the "'433 Patent") and 6,665,680 (the "'680 Patent") (together, the "patents-in-suit"). Am. Compl. (ECF No. 22) at 1 & Exs. 1 & 2.  Mindbase alleges that "Google internet search and Google Ads" infringe claim 13 of each of the patents-in-suit.  *Id.* ¶¶ 19, 23, 35.

Google is a Delaware limited liability company that is headquartered in Mountain View, California.  Ex. A (Declaration of Andrew Rope ("Rope Decl.")) ¶ 2.  Google has been headquartered in the Northern District of California since 1998, and it employs over 50,000 people in that district.  *Id.* ¶¶ 2, 3.  The majority of Google's total employees in the United States—approximately 59 percent—including engineers, product managers, marketers, executives, and staff, are based in the Northern District of California.  *Id.* ¶ 3.

Mindbase's Amended Complaint broadly accuses two internet-based services of patent infringement—Google internet search and Google ads (the "Accused Services").  Because Mindbase's deficient allegations fail to identify any particular aspects of these complex and multifaceted services that allegedly infringe the patents-in-suit, Google cannot pinpoint the specific Google employees who have the most relevant knowledge.[2]  That said, the majority of the research, design, development, and testing activities related to Google internet search and Google ads take place in the Northern District of California.  *Id.* ¶ 4.  Further, the majority of the Google managers and team leads involved in the most significant design and engineering decisions related to the Accused Services work in the Northern District of California, as do the majority of the marketing, finance, and sales teams responsible for the Accused Services.  *Id.* ¶¶ 5, 6.

In contrast, Google is not aware of any employee with relevant knowledge based in this District.  There are only 57 Google employees at the Google Miami office identified in the Amended Complaint (the "Miami Office"), which is the only Google office in this District and indeed in Florida.  *Id.* ¶ 7.  The majority of those employees work in sales.  *Id.*  No research,
/ / /

---

[1] On January 11, 2021, Mindbase amended its complaint by stipulation to substitute Google as the defendant in this action.  (ECF No. 22.)
[2] Because Mindbase's allegations fail to comply with the pleading standard set forth in *Iqbal* and *Twombly,* Google will move to dismiss Mindbase's complaint for failure to state a claim.

design, development, engineering, or testing of the Accused Services is based out of the Miami Office. *Id.*

Documents regarding Google's products and services are generally created and maintained by the employees working on those products and services. *Id.* ¶ 8. As discussed above, the majority of Google employees who work on the Accused Services are located in and around Mountain View, California. Thus, the relevant documents regarding the Accused Services are primarily located in the Northern District of California. Because no design, development, engineering, or testing related to either of the Accused Services is based out of the Miami Office, it is highly unlikely that any relevant documents are located in this District.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In patent cases, the law of the regional circuit in which the case was originally brought governs a court's analysis of a motion to transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Courts in the Eleventh Circuit "employ a two-step process" in considering motions to transfer. *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. Jan. 19, 2016). Courts first determine "whether the action could have been pursued in the venue to which transfer is sought." *Id.* If that threshold is met, courts next weigh several public and private interest factors in determining "whether convenience and the interest of justice require transfer to the requested forum." *Id.*

## ARGUMENT

The relevant factors weigh heavily in favor of transfer of this action to the Northern District of California, where Google is headquartered and where the majority of material witnesses and evidence are most likely to be located.

**I.     Mindscape Could Have Brought Suit in the Northern District of California.**

As a threshold matter, section 1404(a) requires that the action could have been filed in the proposed transferee district. *See* 28 U.S.C. § 1404(a). "With regard to this first prong, an action 'might have been brought' in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court."

/ / /

*Carucel Investments*, 157 F. Supp. 3d at 1223.  Here, there can be no dispute that this action could have been brought in the Northern District of California.

First, the Northern District of California has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because it involves alleged patent infringement under 35 U.S.C. § 271.  *See* Am. Compl. ¶ 3.

Second, Google is amenable to service of process issuing out of the Northern District of California because Google is "at home" in California and subject to general personal jurisdiction there. Personal jurisdiction may be based on either general jurisdiction or specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  A corporation is considered "at home" for purposes of general jurisdiction in its state of incorporation or where it has its headquarters, or principal place of business.  *Daimler*, 571 U.S. at 137.  Here, Google is headquartered in Mountain View, California.  *See* Rope Decl. ¶ 2.

Finally, venue is proper in the Northern District of California.  Venue in patent cases is controlled by 28 U.S.C. § 1400(b).  *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518-19 (2017).  Venue is proper in any judicial district where the defendant "has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *TC Heartland*, 137 S. Ct. at 1519.  This test is met in the Northern District of California.  First, the Northern District of California is the "center of gravity" of the alleged acts of infringement in this case, *see infra* Part II.A.1.  Second, Google has a "regular and established place of business" in the Northern District of California.  The Federal Circuit has identified three general requirements for determining whether a defendant "has a regular and established place of business" in the district where the action is filed: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  Those requirements are met here because Google is headquartered in the Northern District of California.  *See* Rope Decl. ¶ 2.  Indeed, numerous courts, including after *TC Heartland*, have found venue proper as to Google in the Northern District of California.  *See, e.g., Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-00504-JRG-RSP, 2020 WL 3064460, at *2 (E.D. Tex. June 8, 2020); *In re Google Inc.*,

No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017); *Williamson v. Google Inc.*, No. 14-216-GMS, 2015 WL 13311284, at *1 (D. Del. Mar. 2, 2015).

Accordingly, the Northern District of California is an adequate alternative forum because the threshold test for transfer under section 1404(a) of whether the action could be brought there is met.

## II.     The Private and Public Interest Factors Weigh in Favor of Transfer.

Courts next consider the following the private and public interest factors in determining whether a transfer is warranted:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on a totality of the circumstances.

*Carucel Investments*, 157 F. Supp. 3d at 1224 (citation omitted).

On balance, the public and private interest factors weigh strongly in favor of transfer to the Northern District of California.

### A.     The Private Interest Factors Favor Transfer.

In considering the private interest factors in patent cases, courts recognize that the preferred forum "is where the accused product was designed and developed," i.e., "the center of gravity" of the case. *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009). Accordingly, these factors favor transfer to the Northern District of California.

#### 1.     The Court should disregard Mindbase's choice of forum because the center of gravity of the accused activity is the Northern District of California.

Courts should disregard the plaintiff's choice of forum in patent cases if that forum is not the "center of gravity of the accused activity." *Trace-Wilco*, 2009 WL 455432, at *2-3. Thus, "district courts often grant motions to transfer venue" to the jurisdiction where the "center of gravity" is located. *Carucel Investments*, 157 F. Supp. 3d at 1225 (citing *Trace-Wilco*, 2009 WL 455432, at *2-3). Indeed, "the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Trace-Wilco*, 2009 WL 455432, at *3 (citation omitted).

Here, the "center of gravity," and therefore the preferred forum, is clearly the Northern District of California. As previously discussed, Google "maintains its global headquarters" in the Northern District of California. *See Trace-Wilco*, 2009 WL 455432, at *3; *see also* Rope Decl. ¶ 2. Google also conducts the majority of "research and development of the allegedly infringing products" in that district. *See id.*; *see also* Rope Decl. ¶¶ 4, 5. Moreover, Google makes the majority of "the decisions regarding marketing and sales of the accused products" in the Northern District of California. *See Trace-Wilco*, 2009 WL 455432, at *3; *see also* Rope Decl. ¶ 6.[3] On the other hand, no relevant work on the Accused Services is based out of the Miami Office. Rope Decl. ¶ 7.

Accordingly, because the center of gravity in this case is in the Northern District of California, that district is the preferred forum, and transfer is warranted. *See, e.g., Carucel Investments*, 157 F. Supp. 3d at 1228-1229 (granting motion to transfer in part because transferee district was the "center of gravity" and therefore "significantly more appropriate given the fact that the core of activity surrounding the design, development, and production of the Accused Products occurred there"); *ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, No. 13-80239-CIV, 2013 WL 9827411, at *3 (S.D. Fla. June 14, 2013) (granting motion to transfer in part because the "center of the accused activity giving rise to this case occurred in [the transferee district]"); *Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, No. 14-CIV-22652, 2015 WL 224952, at *5 (S.D. Fla. Jan. 15, 2015) (granting motion to transfer to the Northern District of California in part because the action's "center of gravity" was located there and "no aspect of the design or development of the Accused Products occurred in the Southern District of Florida"); *Trace-Wilco*, 2009 WL 455432, at *3 (granting motion to transfer to the Northern District of California in part because "the center of gravity of the alleged infringement occurred in northern California").

### 2. The convenience of the witnesses favors transfer.

In weighing the convenience of the witnesses, courts focus on where the material witnesses reside. *See Trace-Wilco, Inc.*, 2009 WL 455432, at *3. Materiality in patent

/ / /

---

[3] Google search and Google ads are offered nationwide, including in Florida. But, the offering of a service nationwide does not create a substantial interest in this District. *Carucel,* 157 F. Supp. 3d at 1227.

infringement actions concerns "analysis of facts, documents and testimony relating to the design, development, production, marketing, and sale of [the accused products]." *Id.*

Again, the broad, vague nature of the allegations in the Amended Complaint and the scope of the Accused Services render it impossible at this stage to identify the specific Google employees who are most relevant to this action. That said, the location of the greatest number of Google employees involved in the research, development, testing activities, significant design and engineering decisions, marketing, finance, and sales related to the Accused Services is the Northern District of California. Rope Decl. ¶¶ 4, 5, 6. Thus, it is likely that "most of the witnesses that will be knowledgeable about the infringement issues are located in northern California." *See Trace-Wilco, Inc.*, 2009 WL 455432, at *3.

Conversely, although Mindbase's principal place of business is in the Southern District of Florida, there appear to be at most only two people in this District with potentially relevant knowledge. Am. Compl. ¶ 1. The Amended Complaint identifies only one individual—"Gary Sharp, co-founder, CEO, . . . co-owner of Mindbase, [and] the co-inventor of the Patents-in-Suit"—who will likely be involved in prosecuting this action. *Id.* ¶ 9. Mindbase's "2020 Florida Limited Liability Company Amended Annual Report" names only one other individual as "Manager"—James Modla. *See* Ex. B. In sum, there appear to be at most two Mindbase employees that have the potential to be witnesses in this case. Thus, the Google witnesses likely outnumber the Mindbase witnesses, and the Google witnesses' knowledge is likely to be more material to the allegations of infringement.

Thus, more witnesses with knowledge of Google's allegedly infringing activities "will be inconvenienced by conducting this litigation in Florida than would be if the case is tried in northern California." *See Trace-Wilco, Inc.*, 2009 WL 455432, at *3; *see also Rothschild*, 2015 WL 224952, at *5 (finding that this factor weighed in favor of transfer where "a substantial portion of defendant's witnesses were located in the Northern District of California").

Further, it appears that there may also be non-party witnesses in California with relevant knowledge of the research and development of the patents-in-suit, which could be relevant to invalidity defenses based on, for example, prior public use or sale of the claimed invention. *See* 35 U.S.C. § 102(a). Mr. Sharp's LinkedIn profile states that from 1986 to 1995 Mr. Sharp worked as the Director of the Management Research Foundation located in Sacramento, California. *See* Ex. C (screenshot of LinkedIn profile of Gary Sharp). The profile describes Mr.

Sharp's role in the research and development of the Mindbase technology while at the Management Research Foundation "with one co-director," and asserts that Mr. Sharp raised funds "to finance the research and development." *Id.* Because Mr. Sharp conducted those research, development, and fundraising activities in California for a period of nine years until 1995, there may be relevant prior art witnesses still residing in California who would be inconvenienced if this Court retained the case. *See Blackbird Tech LLC v. Cloudflare, Inc.*, No. 17-283, 2017 WL 4543783, at *9 (D. Del. Oct. 11, 2017) (noting that "the location of potential prior art witnesses must be a consideration in the venue transfer analysis") (citing *Genentech*, 566 F.3d at 1343).

Accordingly, the witness convenience factor weighs strongly in favor of transfer to the Northern District of California.

### 3. The location of relevant documents and ease of access to sources of proof favor transfer.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* Although technological advancements in this "era of electronic storage and transmission" may lessen the weight of this factor, they do not render it superfluous. *See id.* at 1346 (rejecting argument that this factor is antiquated due to technological advancements).

As previously discussed, documents regarding Google's products and services are generally created and maintained by the employees working on those products and services. Rope Decl. ¶ 8. Because it is likely that the majority of Google employees with relevant knowledge of the Accused Services are located in and around Mountain View, California, the relevant documents regarding the Accused Services are primarily located in the Northern District of California. *Id.* ¶¶ 5, 6. Further, and as discussed *supra* Part II.A.2, there may be relevant documents related to the research and development of the patents-in-suit located in California because the Mindbase technology apparently was researched and developed there. *See* Ex. C.

Accordingly, because the bulk of the relevant documents and access to sources of proof are located in the Northern District of California or at least within California, this factor weighs in favor of transfer. *See Trace-Wilco*, 2009 WL 455432, at *4.

### 4. The convenience of the parties favors transfer.

It is indisputable that Google has heavy ties to Northern California. Google has been headquartered in Northern California since 1998. Rope Decl. ¶ 2. The majority of its tens of thousands of U.S.-based employees—including those most involved in the research, design, development, testing, marketing, and sales of the Accused Services and likely to be involved in this action—work there. *Id.* ¶¶ 3-6. In contrast, only 57 Google employees are based in the Miami Office, and none of them work on design, development, engineering, or testing of the Accused Services. *Id.* ¶ 7. Thus, litigating this action in the Northern District of California will be more convenient for Google.

As previously discussed, although Mindbase's principal place of business is located in the Southern District of Florida, there appear to be at most two Mindbase employees who would be potentially involved in this action. *See* Am. Compl. ¶¶ 1, 9; Ex. B. Thus, it appears that at most two Mindbase employees would be required to travel if this case were tried in the Northern District of California.

Given Google's heavy ties to the Northern District of California and the location of the center of gravity in that district, Google would be more inconvenienced litigating this case in the Southern District of Florida than Mindbase would be litigating in the Northern District of California. Indeed, in similar circumstances, courts have found that this factor weighs in favor of transfer because the defendant would be more inconvenienced than the plaintiff if the case were not transferred. *See Trace-Wilco*, 2009 WL 455432, at *3 (finding convenience-of-parties factor weighed in favor of transfer where center of gravity was located in the Northern District of California and plaintiff had "at most only two employees who might have to travel for this case"); *see also Rothschild Storage*, 2015 WL 224952, at *4 (same).

### 5. The locus of operative facts favors transfer.

Courts considering the "locus of operative facts" in patent cases have done so in relation to the center of gravity of the case. *See Advanced Aerodynamics, LLC v. Unmanned Cowboys, LLC*, No. 0:15-cv-62679, 2016 WL 8738383, at *5 (S.D. Fla. May 31, 2016). Thus, where "the design, development, [and] production" of the accused product occurred in the transferee district, the fact that the allegedly infringing activities also "produced damage" in the plaintiff's chosen forum "does not shift the locus of operative facts to [that forum]." *Id.* Instead, the locus of

/ / /

operative facts remains where the center of gravity is located, even if the inventors of the patents-in-suit reside in the plaintiff's chosen forum. *Id.*

As previously discussed, the center of gravity in this case—and therefore the preferred forum—is the Northern District of California because that is where the Accused Services were designed and developed and likely where the majority of material activity related to the Accused Services is located. Accordingly, this factor weighs strongly in favor of transfer. *See id.*

### 6. **The availability of compulsory process favors transfer.**

Under Federal Rule of Civil Procedure 45, "a district court may compel attendance through the issuance of a subpoena at any place within the district of the court by which it is issued or at any place within 100 miles of where the deposition, trial, or hearing is being held." *Genentech*, 566 F.3d at 1345. Thus, in weighing this factor courts consider whether potentially relevant witnesses can be compelled to appear in the fora at issue. *See Rothschild Storage*, 2015 WL 224952, at *4. Given that the center of gravity in this case is in the Northern District of California, that court most likely has subpoena power over the greatest number of potential witnesses with relevant knowledge in this action, including potential third parties with knowledge of Mindbase's research and development activities in California. Indeed, this Court cannot compel the attendance of any witnesses located within the center of gravity of this case. Accordingly, this factor weighs strongly in favor of transfer. *See id.*

### 7. **The relative means of the parties does not favor transfer.**

Google is indisputably a larger corporate entity than Mindbase, and Google therefore recognizes that this factor does not weigh in favor of transfer.

***

On balance, six of the seven private interest factors strongly favor transfer to the Northern District of California and one factor favors retaining the action.

### B. **The Public Interest Factors and the Interests of Justice Favor Transfer.**

Courts next "consider, based on the totality of the circumstances, the interests of justice as well as several other public interest factors." *Carucel Investments*, 157 F. Supp. 3d at 1228-29. Those factors include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the

application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Id.* at 1229.

### 1. The Northern District of California's substantial interest in adjudicating this case weighs in favor of transfer.

In considering the local interests of the fora, this Court has evaluated the number of employees a corporate defendant employs in the transferee district in relation to the circumstances of the parties' ties to the plaintiff's chosen forum. *See, e.g.*, *Carucel Investments*, 157 F. Supp. 3d at 1229; *Rothschild Storage*, 2015 WL 224952, at *6. And, this Court has recognized that the Northern District of California "has a substantial interest in adjudicating controversies involving a corporation employing hundreds of California residents" and headquartered in that district. *Rothschild Storage*, 2015 WL 224952, at *6. That interest is especially substantial here, given that Google has been headquartered in the Northern District of California for over two decades and employs *tens of thousands* of California residents in that district. Rope Decl. ¶¶ 2, 3. And although Google has an office in this District, there can be no argument that its relatively small presence here creates an equally substantial interest. Further, the Amended Complaint's conclusory allegations of Google's infringing activities in the Southern District of Florida involving services offered globally and Mindbase's mere incorporation and residency in Florida do not "present circumstances in which Florida has a substantial interest." *See Carucel Investments*, 157 F. Supp. 3d at 1229.

California's substantial interest in this case is further demonstrated by the fact that Mr. Sharp apparently created the purported Mindbase technology underlying the patents-in-suit over a period of nine years while based in Sacramento, California. *See* Ex. C; *see also supra* at 7-8. Thus, both the Mindbase technology and the Accused Services were created in California. Given that the technologies at issue in this case were both designed, researched, and developed in California, that state has a substantial local interest in the resolution of this patent infringement action.

Accordingly, this factor weighs in favor of transfer.

### 2. There are no jurisdictional or governing law issues weighing against transfer.

Federal jurisdiction in this case is conferred by the Patent Act, and all federal courts are considered "equally familiar with patent law." *See Carucel Investments*, 157 F. Supp. 3d at

11

1229. Similarly, because this is a dispute arising under federal law, there are no "conflict of law" issues weighing against transfer. All appeals will be to the Federal Circuit. Thus, this factor is neutral.

### 3. Transferring this case presents no risk of unfairness in burdening potential jurors in an unrelated forum.

In at least two other cases, this Court has found the burden on potential jurors in a transferee district to be "light" where the defendant employed "hundreds" of residents from the transferee forum state. *See id.; Rothschild Storage*, 2015 WL 224952, at *6. Here, the Northern District of California's interest in adjudicating this matter is even higher, because Google employs tens of thousands of California residents. Further, because the center of gravity in this case is in the Northern District of California, there is no risk of unfairness to potential jurors "in an unrelated forum." *See Carucel Investments*, 157 F. Supp. 3d at 1229 (citation omitted). Instead, because that district is the *preferred* forum, retaining this action in the Southern District of Florida presents a greater risk of unfairness to potential jurors, because this district has a lesser interest in the dispute. Accordingly, this factor weighs in favor of transfer.

### 4. Any administrative difficulties weighing against transfer are of minor consideration.

This factor considers the relative congestion of the transferee district in comparison to the plaintiff's chosen forum. *See, e.g.*, *ShadeFX Canopies*, 2013 WL 9827411, at *3; *Trace-Wilco*, 2009 WL 455432, at *4. The Court should weigh this factor lightly, if at all, given that it is "a 'minor consideration' when other factors would result in a transfer of venue." *Trace-Wilco*, 2009 WL 455432, at *4. In any event, both Districts are very busy, with this District having one of the most active criminal dockets in the country, which cases will likely take precedence once jury trials resume.

Here, the private and public interest factors on balance weigh strongly in favor of transfer. Thus, any weight accorded this factor is minimal. Indeed, this Court has not even addressed this factor where the transferee district is the center of gravity and has a substantial interest in adjudicating the case. *See, e.g.*, *Carucel Investments*, 157 F. Supp. 3d at 1228-30 (noting that "transfer would serve the interests of justice where the center of the accused activity occurred in the transferee district") (citation omitted); *Rothschild Storage*, 2015 WL 224952, at *6 (same).

/ / /

### 5. The interests of justice favor transfer.

This Court and others in this District have recognized that the interests of justice favor transfer where the center of gravity and therefore the community with the most substantial interest in adjudicating the matter is in the transferee district. *See, e.g., Carucel Investments*, 157 F. Supp. 3d at 1229 (noting that "transfer would serve the interests of justice where the center of the accused activity occurred in the transferee district") (citation omitted); *ShadeFX Canopies*, 2013 WL 9827411, at *3 (same); *Rothschild Storage*, 2015 WL 224952, at *6 (same); *Trace-Wilco*, 2009 WL 455432, at *4 (same). Accordingly, the interests of justice weigh strongly in favor of transfer.

On balance, six of the seven private interest factors weigh strongly in favor of transfer, and one does not. Two of the public interest factors strongly favor transfer, one does not, and the remaining factor is neutral. Further, the interests of justice strongly favor transfer given that the center of gravity in this case is in the Northern District of California. Accordingly, transfer is warranted pursuant to section 1404(a).

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this action to the Northern District of California.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Google requests the Court hold a hearing on this motion. Google believes that a hearing may be helpful in light of the number of factors relevant to this motion, as well as the interplay between this motion and Google's motion to dismiss. Google requests a 30-minute hearing.

/ / /

/ / /

## **LOCAL RULE 7.1 CERTIFICATION**

In accordance with Local Rule 7.1(a), counsel for the movant has conferred with counsel for Mindbase in a good faith effort to resolve the issues raised in this motion and has been unable to do so.  *See* L. R. 7.1(a)(3).

Dated this 25th day of January, 2021.

                                                    Respectfully submitted,

                                                    */s/ Edward M. Mullins*

| | |
|---|---|
| | Edward M. Mullins (FBN 863920) |
| Michael S. Kwun (*Pro Hac Vice Pending*) | Email: emullins@reedsmith.com |
| Email: mkwun@kblfirm.com | Daniel A. Sox (FBN 108573) |
| | Email: dsox@reedsmith.com |
| KWUN BHANSALI LAZARUS LLP | Marcelo Diaz-Cortes (FBN 118166) |
| 555 Montgomery Street | Email: mdiaz-cortes@reedsmith.com |
| Suite 750 | |
| San Francisco, CA 94111 | REED SMITH LLP |
| Telephone: +1 415 630-2350 | 1001 Brickell Bay Drive |
| Facsimile: +1 415 367-1539 | Suite 900 |
| | Miami, FL 33131 |
| *Counsel for Google LLC* | Telephone: +1 786 747 0200 |
| | Facsimile: +1 786 747 0299 |
| | |
| | *Counsel for Google LLC* |