UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI

| | |
|---|---|
| MINDBASEHQ LLC,<br><br>               Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case No. 1:20-cv-24742-BB |

**GOOGLE LLC'S MOTION TO DISMISS MINDBASEHQ LLC'S AMENDED COMPLAINT**

    Defendant Google LLC ("Google") moves to dismiss the amended complaint of Plaintiff MindbaseHQ LLC ("Mindbase") [D.E. 22, 23] for failure to state a claim. This motion should be granted for the reasons stated below.

**MEMORANDUM OF LAW**

**INTRODUCTION**[1]

    Mindbase's amended complaint should be dismissed for two independent reasons. First, the only claims that are specifically mentioned in the amended complaint are invalid, and invalid patent claims cannot be infringed. Second, the amended complaint fails to state a claim for patent infringement because it lacks any facts that render it plausible that Google infringes any claims of U.S. Patent Nos. 6,510,433 (the "'433 Patent") and 6,665,680 (the "'680 Patent") (together, the "patents-in-suit").[2]

    Claim 13 of each of the patents-in-suit is invalid, and invalidity is a complete defense to a patent infringement claim. Aside from a bald and factually unsupported assertion that Google supposedly infringes unspecified "other claims" of the patents-in-suit, Am. Compl. ¶¶ 23, 35, claim 13 of each of the patents are the only claims that are even mentioned in the amended

---

[1] In a separately filed motion [D.E. 25], Google asks that the Court transfer this case to the Northern District of California. Judicial economy may favor the Court addressing the transfer motion first and then leaving the instant motion to dismiss for resolution by the transferee court.

[2] The '433 and '680 Patents are Exhibits 1 and 2 to the amended complaint, respectively.

1

complaint. But claim 13 of each patent claims patent-ineligible subject matter under 35 U.S.C. § 101. Claim 13 is directed to the abstract idea of structuring data in the same manner as the human mind, which is abstract because it is—by design—the equivalent of human mental work, and thus is merely a means of collecting and organizing information, which courts have repeatedly held is an abstract idea. Moreover, claim 13 fails to recite anything that renders it significantly more than the abstract idea itself. Abstract ideas may not be patented, and thus claim 13 of each of the patents-in-suit is invalid.[3]

In addition, Mindbase's amended complaint pleads no facts explaining how the accused Google services—Google search and Google ads—allegedly meet the limitations of any of the claims of the '433 Patent or the '680 Patent. Instead, Mindbase pleads only the *conclusion* that the accused services meet each limitation of claim 13 of each of the patents-in-suit by repeating, word-for-word, the language of those claims. That fails plausibly to allege infringement and deprives Google of notice of the claimed infringement.

For each of these reasons, Mindbase's amended complaint should be dismissed.

## BACKGROUND

Mindbase alleges that Google directly infringes the '433 Patent and the '680 Patent. Am. Compl. ¶¶ 3, 9 & Exs. 1 & 2. According to Mindbase, "Google internet search and Google Ads" infringe claim 13 of each of the patents-in-suit. *Id.* ¶¶ 19, 23, 35. Both asserted patents expired more than two years ago,[4] and thus Mindbase seeks only past damages. *Id.* at 11 (Request for Relief ¶ B).

---

[3] Claim 13 is stated in "dependent form, referring back to and further limiting another claim or claims . . . ." 37 C.F.R. § 1.75. Claim 13 depends from—*i.e.*, refers back to—claim 2, which itself depends from claim 1. Because claim 13 of each patent depends from claims 1 and 2 of each patent, the invalidity of claim 13 necessarily means that claims 1 and 2 of each patent are also invalid.

[4] A patent expires twenty years after "the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, 365(c), or 386(c), from the date on which the earliest such application was filed." 35 U.S.C. § 154(a)(2). A Patent Cooperation Treaty ("PCT") application is an application under section 365(c). *See Clinicomp Int'l, Inc. v. Cerner Corp.,* No. 17cv2479-GPC(BLM), 2018 WL 2229364, *3 (S.D. Cal. May 16, 2018). Here, the cover pages for both of the patents-in-suit refer, under the heading "Related U.S. Application Data," to PCT/US98/11077, a section 365(c) application that was filed on June 1, 1998. *See* Am. Compl., Exs. 1 & 2. That indicates that the patent applications for both patents specifically referred to that PCT application. The terms for both patents-in-suit therefore expired twenty years after that date—on June 1, 2018. *See* 35 U.S.C. § 154(a)(2).

The '433 Patent is the parent of the '680 Patent, and both patents-in-suit claim priority to the same international and provisional patent applications. '680 Patent at 1:8-11; '433 Patent at 1:7-10. They thus share a common specification.[5] The patents purport to solve "major problems that [were] inherent in all [then] available database systems." '433 Patent at 1:40-41. But rather than relying on their own inventive concept, the inventors used "important clues" from "the human mind," because they believed the human mind to be "the only thing known" to solve the problems they identified. *Id.* at 2:10-12. The patents thus "use the neuron-synapse-neuron model" from the human mind for structuring relationships between data elements in a purportedly "new database structure." *Id.* at 2:19-21.

Each Mindbase patent "is based on the completely detailed information people have in their minds" and is pictorially described in figure 1(b) of the patents-in-suit:



*Id.* at 2:65-66 & fig. 1(b). The goal is for "a computer system" to "simulate the way people communicate." *Id.* at 3:19-20.

The claims are directed to a database that the specification describes as having database elements that are divided into "tangible" and "intangible" elements. *Id.* at 7:9-10. Tangible elements "have physical weight and can be weighed on a scale," and are referred to as "cause" elements—essentially, nouns. *See id.* at 7:11-15. Intangible elements are "all of the other data elements that refer to things that do not have weight," and can be subdivided into "effect" and "descriptor" elements. *Id.* at 7:14-19. Effects "are verbs," and descriptors describe cause elements or cause-effect pairs—essentially, they are adjectives or adverbs. *See id.* at 7:21-26, 8:7-10. For example, in the sentence, "The tall man drove the car 50 miles per hour," the man or the car is a cause element, "drove" or "drove the car" is an effect element, and "tall" and "50

---

[5] For ease of reference, Google's citations to the common specification are hereinafter to the '433 Patent.

3

miles per hour" are descriptors. *Id.* at 7:64-8:2. In short, the claims describe collecting and organizing information using principles of elementary grammar.

The amended complaint asserts that Google infringes claim 13 of each of the patents-in-suit. Am. Compl. ¶¶ 23, 35. In each patent, claim 13 depends from claim 2, which itself depends from claim 1, an independent claim. In the '433 Patent, claim 1 recites:

> 1. A database of information stored in a fixed medium, said database comprising:
>
> a set of tangible data elements, said tangible data elements representing things which have physical weight and can cause an effect;
>
> a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed;
>
> said set of intangible data elements including a first subset of effect data elements, said effect data elements representing verbs standing alone and in combination with other words, which describe actions, objectives, results, missions, procedures and processes; and,
>
> said set of intangible data elements including a second subset of descriptive data elements, said descriptive data elements describing said tangible data elements, said effect data elements and degrees of performance of said tangible data elements.

'433 Patent at 35:12-29. Claim 2 then recites:

> 2. The database of claim 1, wherein:
>
> each said tangible data element is linked to each said effect data element partially or wholly caused by said tangible data element; and,
>
> each said effect element is linked to each said tangible data element required for said effect to occur.

*Id.* at 35:30-35. And, finally, claim 13 recites:

> 13. The database of claim 2, wherein at least one of each said link between a tangible data element and an intangible data element is itself linked to at least one specific degree of performance that describes in more detail said cause-effect relationship established by said at least one link between a tangible data element and an intangible data element.

*Id.* at 36:1-6. Claims 1, 2, and 13 in the '680 Patent are nearly identical to the claims in the '433 Patent. Claim 1 of the '680 Patent has minor changes in wording; redlined against claim 1 in the '433 Patent, it recites:

> 1. A database of information stored in a fixed medium, said database comprising:

4

> a set of tangible data elements, said tangible data elements representing things which have physical weight and can cause an effect;
>
> a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed;
>
> said set of intangible data elements including a first subset ~~of~~**having** effect data elements, said effect data elements representing **at least one among** verbs standing alone and **verbs** in combination with other words, which describe **at least one among said tangible data elements,** actions, objectives, results, missions, procedures and processes; and,
>
> said set of intangible data elements including a second subset ~~of~~**having** descriptive data elements, said descriptive data elements describing **at least one among** said tangible data elements, said effect data elements ~~and~~**,** degrees of performance of said tangible **data elements, and the nature of the relationship between the tangible data elements and the effect** data elements.

*Compare* '680 Patent at 35:22-44 *with* '433 Patent at 35:12-29.  The additions recited by claims 2 and 13 in the '680 Patent are identical to the additions recited by claims 2 and 13 in the '433 Patent.  *Compare* '680 Patent at 35:45-50, 36:15-20 *with* '433 Patent at 35:30-35, 36:1-6.

Mindbase provides only what it refers to as a "high-level overview" of Google search and Google ads, *see* Am. Compl. ¶¶ 24, 36, and then summarily alleges that the limitations of claim 13 of each of the patents-in-suit are met by those services by repeating nothing more than the literal language of each claim and asserting, without pleading any facts, that each limitation in some unexplained way is met by the "Google Accused Services."  *See id.* ¶¶ 25-30, 37-42.  Mindbase does not allege that any specific aspect of either Google search or Google ads meets any limitation of claim 13 of either patent.

## ARGUMENT

**I.     CLAIM 13 OF EACH OF THE PATENTS-IN-SUIT IS INVALID UNDER 35 U.S.C. § 101, AND THE AMENDED COMPLAINT THEREFORE FAILS TO STATE A CLAIM.**

The only claims that Mindbase even discusses in its amended complaint are claim 13 of each asserted patent.  But, for the reasons discussed below, claim 13 of each asserted patent is invalid because it claims patent-ineligible subject matter.  *See* 35 U.S.C. § 101.  Invalidity is a complete defense to infringement.  *Lough v. Brunswick Corp.,* 86 F.3d 1113, 1123 (Fed. Cir. 1996).  Thus, because the only patent claims discussed in it are invalid, the amended complaint fails to state a claim upon which relief can be granted and it should be dismissed at least for this reason.

The Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. But section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 216 (2014) (internal quotation marks omitted).

To determine whether patent claims are invalid for claiming an abstract idea, *Alice* provides a two-part test. At step one, a court determines "whether the claims at issue are directed to" an abstract idea. *Alice,* 573 U.S. at 217. If so, then at step two, a court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.,* 566 U.S. 66, 79, 78 (2012)). This second step is a search for an "inventive concept" that assures that the claims in practice amount to significantly more than a patent on the abstract idea itself. *Id.* at 217-18.

Patent eligibility can be determined, in an appropriate case, on a motion to dismiss pursuant to Rule 12(b)(6). *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1125 (Fed. Cir. 2018). This determination need not require a full claim construction. *Id.* Any claim construction disputes need only be resolved "to whatever extent is needed to conduct the § 101 analysis." *Id.* Thus, for example, where a patentee offers no proposed construction of any term that would preclude dismissal, patent ineligibility can be decided on a motion to dismiss. *Cleveland Clinic Found. v. True Health Diagnostics LLC,* 859 F.3d 1352, 1360 (Fed. Cir. 2017).[6]

Where all of the claims are substantially similar and linked to the same abstract idea, it is enough to analyze a representative claim under section 101. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1349 (Fed. Cir. 2014). A single claim from one patent can be representative of claims from other patents with a shared specification. *See, e.g., Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1337 (Fed. Cir. 2017) (treating one claim as representative of claims of two patents with a shared

---

[6] Google does not believe that any claim construction is necessary in this case prior to resolving the subject matter eligibility issue.

specification). Here, the patents-in-suit rely on a shared specification, and the claims are, aside from some minor wordsmithing, identical. Because Mindbase's amended complaint discusses only claim 13 of the patents-in-suit, and because claim 13 in each of the patents is practically identical, Google treats claim 13 of the '433 Patent (hereinafter simply referred to as "claim 13") as representative of claim 13 in both patents—and, indeed, each of the arguments below is equally true for claim 13 of the '680 Patent. Moreover, because it does not discuss any other claims, the amended complaint could only even potentially state a claim as to other patent claims if claim 13 is representative of those other claims. Google thus treats claim 13 as representative of all patent claims asserted by Mindbase in the amended complaint.

> A. *Alice* step one: claim 13 is directed to an abstract idea.

Step one in the *Alice* framework involves "look[ing] at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1257 (Fed. Cir. 2016) (quotation marks omitted). "[T]he specification [is] helpful in illuminating what a claim is 'directed to.'" *ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 766 (Fed. Cir. 2019), *cert. denied,* 140 S. Ct. 983 (2020). "But while the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *Id.*

> 1. **Claim 13 is directed to the abstract idea of structuring data in the same manner as the human mind.**

Inventions that "are the equivalent of human mental work" are "unpatentable abstract ideas." *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1371 (Fed. Cir. 2011) (citing *Gottschalk v. Benson,* 409 U.S. 63, 67 (1972)). Therefore, "analyzing information by steps people go through in their minds" is an "essentially mental process[] within the abstract-idea category." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016). Indeed, courts have repeatedly held that "methods of organizing human activity" are abstract. *In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 613 (Fed. Cir. 2016); *see also Intell. Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1367 (Fed. Cir. 2015) (invalidating database claims directed to budgeting because they were "not meaningfully different from the ideas found to be abstract in other cases . . . involving methods of organizing human activity"); *Content Extraction & Transmission,* 776 F.3d at 1347 (collecting, recognizing, and storing data is an abstract idea).

Claim 13 is directed to the abstract idea of structuring data in the same manner as the human mind. The purported invention thus *by design* is the equivalent of human mental work, and is unpatentable as an abstract idea. Categorizing and linking data using basic rules of grammar is a quintessential example of a method of organizing human activity, confirming that claim 13 is directed to an abstract idea.

Although claim 13 claims a database, the mere recitation of a database does not make a patent claim any less abstract. *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.,* 811 F.3d 1314 (Fed. Cir. 2016) (recitation of a generic database is not inventive, citing *Accenture Glob. Servs. GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1344 (Fed. Cir. 2013)). Beyond the term "database," the rest of the claim language in claim 13 and the claims from which it depends confirms that claim 13 is directed to the abstract idea of organizing data in the same manner as the human mind.

Specifically, claim 1 recites that the database comprises, in effect, nouns, verbs, adjectives, and adverbs, and those categories are "based on the completely detailed information people have in their minds . . . ." '433 Patent at 2:65-66. Tangible data elements are those that can "cause an effect" and basically are nouns. *See id.* at 35:13-15 (tangible data elements represent "things which have physical weight"). Intangible effect data elements represent "verbs standing alone" or verbs "in combination with other words." *Id.* at 35:19-23. Intangible descriptor data elements basically are adjectives or adverbs. *See id.,* fig. 2(a) (descriptors describe cause or effect data elements). Because these categories replicate language constructs that exist in the human mind, they are part of the abstract idea of structuring data in a database the same way that is done by the human mind.

Claim 2 additionally requires that tangible data elements be "linked to" effects caused by the tangible data elements and vice-versa. That is, as is true in the human mind, nouns and verbs do not exist in a vacuum, but instead work together in a sentence, as schoolchildren once learned from diagramming sentences—a practice that long predates the patents-in-suit. *Cf.* Juana Summers, *A Picture of Language: The Fading Art of Diagramming Sentences,* https://www.npr.org/sections/ed/2014/08/22/341898975/a-picture-of-language-the-fading-art-of-diagramming-sentences (Aug. 22, 2014) (explaining that diagramming sentences dates back to 1877). Claim 13 additionally requires that "said links"—*i.e.,* the links required by claim 2— themselves are linked to "at least one specific degree of performance that describes in more

8

detail said cause-effect relationship . . . ." *See* '433 Patent at 35:30-35, 36:1-6. Stripped of its jargon, claim 13 merely describes the role of adverbs, which humans use to modify verbs by linking a verb to the degree to which an action is performed—for example, whether something is done quickly or slowly. By the specification's own admission, the "links" required by claims 2 and 13 are intended to be the equivalent of the "neuron-synapse-neuron" model used by the human mind. *See id.* at 2:13-21.

       The presence of the word "link" in claims 2 and 13 does not render claim 13 any less abstract. To the contrary, as explained in the specification, that term draws on an abstract idea borrowed from the human mind; according to the specification, the human mind either stores each data element "only once," or, if a data element is stored multiple times, the mind "links" those locations "to act as if a data element is stored only once." *Id.* at 2:1-5. When the specification later introduces the idea of linking tangible and intangible data elements in a database, it simply states that these elements are "linked," with no suggestion that it is any different from the way linking is performed by the human mind. *See id.* at 4:13-15. Thus, "linking" in claim 13 adds nothing more to the abstract idea of structuring data in the same manner as the human mind.

       The specification confirms what the claim language shows directly. In summarizing the invention, the inventors claim that their database allows a computer system to "simulate the way people communicate." *Id.* at 3:19-20. The "neuron-synapse-neuron model" that the inventors rely upon is the model that "the human brain uses . . . to send signals and structure relationships." *Id.* at 2:14-15. The invention thus relies on the same semantic categories and structures used by the human mind, such as distinguishing between "tangible data elements" that are "physical data elements that have weight," and the other data elements that the inventors call "intangible data elements." *Id.* at 2:30-36.

       In short, claim 13 is directed to the abstract idea of structuring data using principles of elementary grammar—the same way that data is structured by the human mind. That includes linking parts of speech (*i.e.,* nouns, verbs, adjectives, and adverbs), just as the human mind links the word "man" to the word "drove" in the sentence, "The tall man drove the car 50 miles per hour." *See id.* at 7:55-8:5. Because that idea is simply a method of organizing human activity, claim 13 is directed to an abstract idea. *In re TLI Commc'ns,* 823 F.3d at 613; *see also CyberSource,* 654 F.3d at 1371.

## 2. Claim 13 is not directed to a technological improvement.

While claims that "effect an improvement in [a] technology or technical field" may be patent eligible, *see Alice,* 573 U.S. at 225, claims that are not directed to a technological improvement are not. Indeed, "advances in non-technological disciplines . . . simply do not count" in "assessing patent eligibility." *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 721 (Fed. Cir. 2014). Here, the essential goal of the patents-in-suit is to repeat the very solution used by the human mind, thus borrowing a solution from a non-technological discipline.

Although the inventors purport to solve a problem arising in *database* technology, the fact that they do so by replicating a solution used by the human mind confirms that the solution is not a *technological* improvement. Rather than create a technological solution, the inventors, at best, identified a non-technical solution for use in a technological context. This does not transform an abstract idea into a patentable invention. *Id.* at 716 (use of an abstract idea in a particular technological environment is not inventive). For example, in *OpenTV, Inc. v. Apple, Inc.,* the patentee argued that its patent offered a solution to a technological problem facing interactive television networks—the need to transfer confidential information over an unsecured connection. No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015). But the district court noted that this problem "is not a creature of the Internet age," because "solutions to this problem date back to the invention of smoke signals." *Id.; see also Secured Mail Sols. LLC v. Universal Wilde, Inc.,* 169 F. Supp. 3d 1039, 1049 (C.D. Cal. 2016) (solutions to problems that predate the technology at issue are not technological solutions), *aff'd* 873 F.3d 905 (Fed. Cir. 2017).

Thus, purported improvements that do not solve a "unique technical problem" cannot render an idea non-abstract. *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1316 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.,* 140 S. Ct. 907 (2020). Here, the problems to which the patents-in-suit are directed predate database technology, because the problems were solved by the human mind, which of course itself predates database technology. Not only *can* this approach be done using the human mind, the specification expressly states that this is where the solution came from. '433 Patent at 2:65-66. Necessarily, then, this is not a *uniquely technological* solution. *See OpenTV,* 2015 WL 1535328 at *4 (transmitting, receiving, storing, and organizing confidential information is an abstract idea, not a technological improvement).

Claim 13 and the claims from which it depends offer no technological details at all, beside the non-inventive recitation of a generic database. Claim 1 recites only what types of data are stored in the database, and describes those categories using the non-technological idea of physical weight, and subcategories (effects and descriptors) drawn from human language (verbs, adverbs, and adjectives). Claim 1 thus offers no *technological* solution.

Claims 2 and 13 likewise offer no technological improvement addressing a problem grounded in technology. Instead, claims 2 and 13 are stated "in terms of performing generic computer functions" by instructing the practitioner to link data in the same manner as the human mind. *In re TLI Commc'ns,* 823 F.3d at 612; *see* '433 Patent. at 2:19-21. Neither the claim language nor the specification refers to any particular approach, technological or otherwise, for those links. To the contrary, the specification portrays cause-effect links purely schematically, without any explanation of, for example, a particular technological solution that is necessarily rooted in computer technology. *See* '433 Patent at 9:26-27 & fig. 4.

### B. *Alice* step two: nothing in claim 13 transforms the abstract idea into a patentable application.

Proceeding to step two of the *Alice* analysis, the question is whether the elements of claim 13, either individually or in combination, add significantly more beyond the abstract idea itself that transforms the nature of the claim into a patent-eligible application of the abstract idea. *Two-Way Media,* 874 F.3d at 1338. During this analysis, "[t]he appropriate question is not whether the entire claim as a whole . . . lacks novelty," but whether the elements *apart from the ineligible concept* involve well-understood, routine, and conventional activity, and whether the ordered combination adds anything not present when the elements are considered separately. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.,* 935 F.3d 1341, 1348-49 (Fed. Cir. 2019) (emphasis added), *cert. denied,* 141 S. Ct. 241 (2020).

#### 1. Nothing in claim 13 transforms the claim into anything more than the abstract idea.

Given how closely the language of claim 13 and the claims from which it depends hews to the abstract idea itself, it is unsurprising that nothing in claim 13 transforms the claim into anything more than the abstract idea of structuring data in the same manner as the human mind. Again, claim 1 recites only what types of data—essentially, nouns, verbs, adjectives, and adverbs—are stored in the database, with no specific details about the implementation. And, again, claims 2 and 13 require links between the nouns and verbs (claim 2), and then also to

adverbs (claim 13), just as those parts of speech are linked in the human mind, but the claims do not explain or require any particular technological implementation for those links. Because the patent "does not disclose any particular mechanism" for accomplishing these aims, and claim 13 instead is written in "largely functional terms," it is not a concrete application of the abstract idea. *See Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269, 1271 (Fed. Cir. 2016).

Because the claim language includes no technical details, claim 13 and the claims from which it depends necessarily rely on the practitioner's knowledge of conventional techniques for structuring data. But a claim fails "to supply an inventive concept" when it, like these claims, simply "instruct[s] the practitioner to implement the abstract idea with routine, conventional activity" that is "specified at a high level of generality." *Ultramercial,* 772 F.3d at 715-16 (quotation marks and citation omitted).

Mindbase may argue that the *specification* includes further implementation details, but to be material at step two of the *Alice* framework, an inventive concept "must be evident in the claims." *Two-Way Media,* 874 F.3d at 1338. Here, the high-level language of claim 13 merely requires certain types of data elements that correspond to grammatical categories used by the human mind, and links between those elements that are copied from human rules of grammar. Because claim 13 does not require any particular implementation for those links, Mindbase cannot rely on unclaimed details from the specification to supply an inventive concept. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (rejecting reliance on the specification where "the claims do not call for any form of computer implementation of the claimed methods").

Claim 13 recites nothing significant beyond the abstract idea itself. And "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention significantly more than that ineligible concept." *BSG Tech LLC v. BuySeasons, Inc.,* 899 F.3d 1281, 1290 (Fed. Cir. 2018) (quotation marks omitted). The Court need not consider whether Mindbase's idea of structuring a database by copying the techniques used by the human mind was a new idea, *see* '433 Patent at 2:20-22 (asserting that the claimed invention uses a "new database structure"), because even if it was, it is still an abstract idea, and claim 13's lack of "any meaningful *application* of this idea" renders it invalid. *See Simio, LLC v. FlexSim Software Prods.,* 983 F.3d 1353, 1364 (Fed. Cir. 2020). Thus, whether

12

the claim elements are considered individually or in combination, they do not transform claim 13 into a patentable invention.

### 2. Mindbase's conclusory assertions in the amended complaint do not bar dismissal.

Mindbase cannot rely on its own self-serving but factually unsupported assertions in its amended complaint to oppose dismissal. For example, Mindbase alleges that "[t]he claims of the Patents-in-Suit are directed to patent-eligible concepts." Am. Compl. ¶ 14. But patent eligibility is a legal conclusion, *Simio,* 983 F.3d at 1358, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

Likewise, Mindbase's assertion that its patent claims "involve more than the performance of well-understood, routine, and conventional activities previously known to the industry," Am. Compl. ¶ 15, can and should be disregarded, because the amended complaint pleads no facts showing that to be true, and "conclusory statements" are not enough to avoid dismissal. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The rules of pleading "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

Finally, Mindbase's allegation that prior approaches to databases did not use the categories required by its patent claims, *see* Am. Compl. ¶¶ 16-17, is beside the point because, as discussed above, the patent specification concedes that the use of those categories is intended to replicate the mental work performed by the human mind—which means that those techniques are the abstract idea itself. *CyberSource,* 654 F.3d at 1371 (inventions that are the equivalent of human mental work are abstract ideas). At step two of the *Alice* framework, the question is whether the claims contain *something significantly more* than the abstract idea. 573 U.S. at 217-18. The use of the abstract idea cannot itself render the claims significantly more than the abstraction. *BSG Tech,* 899 F.3d at 1290.

### C. Claim 13 is invalid, and therefore the amended complaint fails to state a claim.

In sum, claim 13 is directed to an abstract idea, and nothing in the claim transforms it into a patentable application of that idea. Claim 13 therefore is invalid because it claims patent-ineligible subject matter. *See Alice,* 573 U.S. at 217-18.[7]

---

[7] Because claim 13 depends from claims 1 and 2, claims 1 and 2 are also invalid.

Other than claim 13 of each patent, the amended complaint alleges only the bare conclusion that Google infringes unspecified "other claims."  *See* Am. Compl. ¶¶ 23, 35.  If claim 13 is representative of those other claims, then they too are invalid under 35 U.S.C. § 101.  *See Content Extraction & Transmission,* 776 F.3d at 1349 (approving use of representative claims in analyzing section 101).  If claim 13 is not representative of those other claims, then the amended complaint fails to state a claim that Google infringes those other claims because it is devoid of any facts explaining how Google infringes them, or even which claims are the ones to which Mindbase is referring.  *Twombly,* 550 U.S. at 555 (the bare assertion of a conclusion does not state a claim).[8]

Thus, whether or not claim 13 of each of the patents-in-suit is representative of any other claims in those patents, because claim 13 is invalid, the amended complaint fails to state a claim upon which relief may be granted.

## II.  MINDBASE HAS NOT PLAUSIBLY ALLEGED THAT GOOGLE INFRINGES ITS PATENTS.

Even aside from the invalidity of claim 13, the amended complaint should be dismissed because Mindbase has not sufficiently pleaded infringement.  Dismissal pursuant to Rule 12(b)(6) is proper where the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal,* 556 U.S. at 678; *see also Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Further, factual allegations "that are 'merely consistent with' a defendant's liability" do not establish facial plausibility.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To state a claim for direct infringement, a complaint must include five factual assertions: (1) ownership of the patent; (2) name of each defendant; (3) cite the patent allegedly infringed; (4) state how the defendant allegedly infringes; and (5) point to the sections of the patent law invoked."  *Advanced Screenworks, LLC v. Mosher*, No. 2:19-cv-758-FtM-29MRM, 2020 WL 1188468, at *3 (M.D. Fla. Mar. 12, 2020).  Mindbase's amended complaint fails to state how Google allegedly infringes, the fourth pleading requirement, and thus must be dismissed.

---

[8] Indeed, as explained below, the amended complaint's patent infringement allegations fail to state a claim even aside from the subject matter eligibility issue.

A claim for patent infringement "is insufficient under *Twombly* and *Iqbal* if it 'simply recit[es] some of the elements of a representative claim and then describe[es] generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements.'" *Global Tech Led, LLC v. Every Watt Matters, LLC*, No. 15-cv-61933-BLOOM/Valle, 2016 WL 6682015, at *2 (S.D. Fla. May 19, 2016) (quoting *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469-EDL, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016)); *Blue Water Innovations, LLC v. Fettig,* No. 18-60671-Civ-Scola, 2019 WL 1904589, at *2 (S.D. Fla. Mar. 8, 2019) (same).  Thus, for example, including screenshots of the accused service and identifying the allegedly infringed patent claims, but without a factual analysis showing how each claim limitation is met by the accused service, fails to state a claim for patent infringement.  *See Advanced Screenworks*, 2020 WL 1188468, at *1, 3; *see also Raptor, LLC v. Odebrecht Constr., Inc.,* No. 17-21509-CIV-ALTONGA/Goodman, 2017 WL 3503399, at *4 (S.D. Fla. Jun. 22, 2017) ("merely including photographs of Defendants' construction site, without providing an element-by-element analysis of how the photographs depict infringement of all limitations of any Claim" does not suffice under *Twombly*).

Mindbase's allegations fall well short of specifically tying the accused services to any asserted claims.  After what it concedes is merely a "high-level overview" of Google search and Google ads, *see* Am. Compl. ¶¶ 24, 36, Mindbase then alleges—word-for-word—that the limitations of claim 13 of each of the patents-in-suit are met by those services.  *See id.* ¶¶ 25-30, 37-42.  That is no different from simply identifying claim 13 as allegedly infringed, which is not enough to state a claim of infringement.  *See Advanced Screenworks*, 2020 WL 1188468, at *3. Indeed, "a patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly/Iqbal* standard by merely copying the language of the claim element, and then baldly stating (without more) that an accused product has such an element." *North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, 2018 WL 11182741 (D. Del. Jan. 3, 2018). Not counting the verbatim recitations of the claim language, Mindbase's allegations regarding the functionality of the accused services comprise a total of *one paragraph*, repeated twice in the amended complaint, that contains little more than purported screenshots from Google's website, and does not refer to the patent claims at all.  *See* Am. Compl. ¶¶ 24, 36.  Mindbase pleads no

facts that tie the accused Google services to any patent claim, and certainly pleads no facts addressing how those services meet each of the limitations of any asserted claims.

For example, Mindbase pleads that "[t]he technology behind Google Accused Services includes a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed," parroting the words of one of the limitations of claim 13 of the '433 Patent. *Compare* Am. Compl. ¶ 27 *with* '433 Patent at 35:17-19.[9] But Mindbase does not plead *facts* showing, or even attempting to show, that Google search or Google ads includes a set of intangible data elements representing words or concepts without physical weight. Mindbase "must detail how each claim is infringed" and must "provide factual support for the alleged infringement of each claim." *Blackberry Ltd. v. Blu Prods.*, No. 16-23535-CIV-MORENO/O'SULLIVAN, 2017 WL 5004845, at *4 (S.D. Fla. Mar. 27, 2017) (quotation marks and citation omitted). Because Mindbase fails to plead facts describing *how* the accused services allegedly infringe any claims of the patents-in-suit, its amended complaint must be dismissed for failure to state a claim. *See, e.g., Advanced Screenworks*, 2020 WL 1188468, at *3; *Global Tech*, 2016 WL 6682015, at *2; *Atlas IP*, 2016 WL 1719545, at *3.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the amended complaint pursuant to Rule 12(b)(6) because the patents-in-suit are invalid under 35 U.S.C. § 101 and because the amended complaint fails to plead facts explaining how Google purportedly infringes any claims of the patents-in-suit.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b), Google requests that the Court hold a hearing on this motion. Google believes that a hearing may be helpful to address any questions the Court may have about subject matter eligibility, among other issues. Google requests a 30 minute hearing. *See* L.R. 7.1(b)(2). For purposes of efficiency, the Court may want to set one hearing to address both this motion and Google's transfer motion.

Dated this 25th day of January, 2021.

---

[9] Although the amended complaint portrays this limitation as being part of claim 13 of the '433 patent, Am. Compl. ¶ 12, it actually is part of claim 1, but as already noted claim 13 depends from claim 2, which itself depends from claim 1.

16

|  | Respectfully submitted, |
|---|---|
|  | */s/ Edward M. Mullins* |
|  | Edward M. Mullins (FBN 863920) |
|  | Email: emullins@reedsmith.com |
| Michael S. Kwun (*Pro Hac Vice pending*) | Daniel A. Sox (FBN 108573) |
| Email: mkwun@kblfirm.com | Email: dsox@reedsmith.com |
|  | Marcelo Diaz-Cortes (FBN 118166) |
| KWUN BHANSALI LAZARUS LLP | Email: mdiaz-cortes@reedsmith.com |
| 555 Montgomery Street |  |
| Suite 750 | REED SMITH LLP |
| San Francisco, CA 94111 | 1001 Brickell Bay Drive |
| Telephone: +1 415 630-2350 | Suite 900 |
| Facsimile: +1 415 367-1539 | Miami, FL 33131 |
|  | Telephone: +1 786 747 0200 |
| *Counsel for Google LLC* | Facsimile: +1 786 747 0299 |
|  | *Counsel for Google LLC* |