UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-24742-BLOOM

MINDBASEHQ LLC,

    Plaintiff,

v.

GOOGLE, LLC,

    Defendant.

_____/

**PLAINTIFF'S RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

    Plaintiff MindbaseHQ LLC ("Mindbase") opposes Defendant Google LLC's ("Google") motion to dismiss the First Amended Complaint [ECF No. 27], pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the inventions of the asserted patents, U.S. Patent Nos. 6,510,433 (the "'433 Patent") and 6,665,680 (the "'680 Patent" and together with the '433 Patent, collectively, the "Patents-in-Suit"), cover patent-eligible subject matter under 35 U.S.C. § 101 and the First Amended Complaint asserts plausible infringement claims that are supported by Google's own websites, as alleged by Mindbase.

**INTRODUCTION**

    In its Motion to Dismiss, Google is asking this Court to do what it cannot do: make factual determinations against a plaintiff and in favor of a defendant at the pleadings stage of litigation. Google's request for a ruling that the Patents-in-Suit are directed to ineligible subject matter requires this Court to ignore the language of the claims and accept Google's characterization of those

1

claims. Google then asks the Court to ignore Mindbase's allegations regarding the claims' inventive concepts and accept Google's assertion that the rules for structuring data set forth in the claims was well-understood, routine, and conventional in the database industry at the time of the inventions.

Google's request for a ruling dismissing the infringement claims similarly hinges on having the Court ignore factual allegations asserted by Mindbase, which detail the claim limitations present in the manner in which Google structures data when conducting internet searches and digital advertising (the "Accused Services"), and accept Google's characterization of these allegations as being something other than a specific factual allegation. In short, the infringement allegations provide fair notice of how Google infringes the Patents-in-Suit and comports with the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure, Eleventh Circuit precedent, the case law of this judicial district, and the U.S. Supreme Court's decisions in *Twombly* and *Iqbal*, and their progeny.

## FACTUAL BACKGROUND

I.  **MINDBASE AND THE PATENTS-IN-SUIT**

The '433 Patent, titled "Database Structure Having Tangible and Intangible Elements and Management System Therefore," issued on January 21, 2003 and the '680 Patent, also titled "Database Structure Having Tangible and Intangible Elements and Management System Therefore," issued on December 16, 2003. See ECF No. 23-1 at 2 and ECF No. 23-2 at 2. As alleged in the First Amended Complaint, the inventors of the Patents-in-Suit, Gary L. Sharp, *et al.*, developed the claimed ideas while working on problems with relational database management systems at the time. *See* ECF No. 22 at 14-17; ECF No. 23-1 at 30 (Description of the Related Art); ECF No. 23-2 at 30 (Description of the Related Art).

The Patents-in-Suit address these problems by disclosing claims that improve the functioning of computers and improve the existing technological processes. *See* ECF No. 22 at 14-17; ECF No. 23-1 at 30-32 (Summary of Invention); ECF No. 23-2 at 30-32 (Summary of Invention). For example, as set forth in the First Amended Complaint, the following representative asserted Claim 13 discloses the complex coding rules for data that are recited in the '433 Patent:

> 1. A database of information stored in a fixed medium,
>
> said database comprising:
>
> a set of tangible data elements, said tangible data elements representing things which have physical weight and can cause an effect;
>
> a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed;
>
> said set of intangible data elements including a first subset of effect data elements, said effect data elements rep resenting verbs standing alone and in combination with other words, which describe actions, objectives, results, missions, procedures and processes; and,
>
> said set of intangible data elements including a second subset of descriptive data elements, said descriptive data elements describing said tangible data elements, said effect data elements and degrees of performance of said tangible data elements.
>
> 2. The database of claim 1, wherein:
>
> each said tangible data element is linked to each said effect data element partially or wholly caused by said tangible data element; and,
>
> each said effect element is linked to each said tangible data element required for said effect to occur.
>
> 13. The database of claim 2, wherein at least one of each said link between a tangible data element and an intangible data element is itself linked to at least one specific degree of

> performance that describes in more detail said cause-effect relationship established by said at least one link between a tangible data element and an intangible data element.

*See, e.g.,* ECF 23-1 at 47.

As alleged in the First Amended Complaint, the Patents-in-Suit claim methods and apparatus that improve database technology and the functioning of computers by adding unconventional technological features, as the specifications and figures in the Patents-in-Suit demonstrate. The Patents-in-Suit also disclose new and useful processes and machines including data storage techniques and structures. *See* ECF No. 22 at §13-17. ECF No. 23-1 at 2-29 and ECF No. 23-2 at 2-29.

## II.  GOOGLE'S INFRINGING CONDUCT

In its First Amended Complaint, Mindbase alleges 1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *See* ECF No. 22 at 2, 6-11. In addition, the First Amended Complaint identifies specific Google services as representative samples of infringing services, namely Google Search and Google Ads. *See id.* at 6. The First Amended Complaint then alleges with specificity, element by element of Claim 13 of the two Patents-in-Suit, how Google's Accused Products infringe the Patents-at-Issue. *See* id. at 6-11. In addition, the First Amended Complaint includes citations to Google's own structured data guidelines which indicate how Google categorizes data, illustrating the plausibility of Mindbase's allegations of Google's infringing conduct. *See id.* at 6-7, 9.

**ARGUMENT**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 12(b)(6) allows a court to dismiss a complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. However, a complaint survives a motion to dismiss where it offers facts sufficient to show that a claim has "substantive plausibility." *Twombly*, 550 U.S. at 347. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Deciding whether a claim is plausible will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* At 679.

The First Amended Complaint alleges facts sufficient to establish that the Patents-in-Suit are directed toward patent-eligible subject matter and that Google has plausibly infringed those patents. In moving to dismiss this Complaint, Google offers its own set of allegations and asks this Court to do what it cannot do: reject a plaintiff's factual allegations and accept the factual allegations asserted in a defendant's responsive pleading.

### I. STANDARD OF REVIEW FOR PATENT ELIGIBILITY

A U.S. patent is presumed valid pursuant to 35 U.S.C. § 282(a), meaning that an accused infringer bears the burden of establishing invalidity by <u>clear and convincing evidence</u> when challenging eligibility under § 101. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (emphasis added). There will be disputed claim construction and factual issues affecting the court's

patent-eligibility analysis. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2013) ("claim construction will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (finding conclusion under § 101 depends on "underlying factual issues"). As the Federal Circuit has explained:

> Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact. And in this case, that question cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice.

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018). Accordingly, Google fails to present clear and convincing evidence that the Patents-in-Suit are directed at an abstract concept.

## II.  MINDBASE'S CLAIMS ARE PATENT-ELIGIBLE.

In its Motion, Google broadens and mischaracterizes the inventions of the Patents-in-Suit, to then allege that the broad mischaracterization is an abstract idea. See ECF No. 27 at 2. Google mischaracterizes Claim 13 of the '433 patent as "directed to the abstract idea of structuring data in the same manner as the human mind." See ECF No. 27 at 8. Google then mischaracterizes the patent's programmatic linking as "just as the human mind links." See ECF No. 27 at 9. Yet, there is absolutely no mention in the claims of the human mind or mental processes. The Patents-in-Suit do not allege any biological or neurological support for the inventions therein. What is in the claims are computer structures and computer processes that enabled the practitioners of these pa-

tents to advance in computer data when conventional database designers were encountering technical problems. And of the 35 figures in the patent specification exemplifying the computer innovations therein, Google cherry-picks from the only 2 figures that include an illustrative image of a human face. Using Google's broad-characterization approach here, one could describe Google Search as merely looking for a requested word within a group of more words. Google's reliance on cases such as *Intellectual Ventures* is misplaced. In that case, the court resolved patent eligibility based on claim construction, not based on defendant mischaracterization. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015). Such *ipse dixit* factual assertions from a defendant are insufficient to carry a motion brought under Rule 12(b)(6).

The Supreme Court and the Federal Circuit have warned against broadening a patent claim for the § 101 analysis: "[T]oo broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." (*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014)) (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 132 S. Ct. 1289, 1293 (2012)) "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." (*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)) "Overgeneralizing claims, 'if carried to its extreme, make[s] all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementations obvious.'" (*Id.*)(citing *Diamond v. Diehr*, 450 U.S. 175, 189 n. 12 (1981)); *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (explaining that courts "must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims").

District courts deny motions under 35 U.S.C. § 101 when defendants attempt to over-generalize the idea to which the claims are directed. *International Business Machines Corp. v. The Priceline Group Inc.*, 2016 U.S. Dist. LEXIS 18660, *30 (D. Del. Feb. 16, 2016) ("By oversimplifying (and thus misidentifying) the basic character of claim 1 of the '601 patent, Defendants have failed to meet their burden of demonstrating that the claim is directed to an abstract idea.") Every invention, if characterized in simplistic or misguided language, can seem abstract. To properly perform the Supreme Court's patent eligibility test, the language of the claims—and not just some arbitrary characterization of the patent—must be used.

A.   *The Asserted Claims Satisfy the Supreme Court's Patent-Eligibility Test.*

To determine patent eligibility, the Supreme Court has identified three steps: review the claim in view of the statutory language of 35 U.S.C. § 101 (*Mayo*, 566 U.S. at 1293; *Alice*, 573 U.S. at 2354); consider the claims in light of the judicial exceptions of laws of nature, natural phenomena, and abstract ideas (*Mayo*, 566 U.S. at 1293; *Alice*, 573 U.S. at 2350); and evaluate whether the claims have transformed an otherwise patent-ineligible concept into a patent-eligible invention (*Mayo*, 566 U.S. at 1294; *Alice*, 573 U.S. at 2350). The U.S. Patent and Trademark Office ("USPTO") uses the *Alice*/*Mayo* test to review the patent eligibility of every one of the over 620,000 patent applications that it receives each year[1]. For the purpose of clarity, we can consider the *Alice*/*Mayo* steps as **1)** the statutory categories, **2a)** the judicial exceptions, and **2b)** the inventive concept.[2]

---

[1] Each year since 2015, the year after the *Alice* decision. https://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm  (last accessed Feb. 2, 2021)

[2] *Manual of Patent Examining Procedure*, § 2106 Patent Subject Matter Eligibility, revised Oct. 2019.

### *1. The Asserted Claims Are Directed to New and Useful Machines: Step 1*

To evaluate 35 U.S.C. § 101, a court "must first determine whether the claims at issue are directed to a patent-eligible concept." *Alice*, 573 U.S. at 2350  Patent eligibility is accorded to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101  Unlike patents that are directed to risk hedging or inter-mediated business settlement, the Patents-in-Suit are directed to an improvement in computer functionality; and computer software inventions are patent-eligible.  "Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *Enfish*, 822 F.3d at 1338

The plain language of the claims and the computer enablement in the written description and drawings make evident that the Patents-in-Suit are directed to computer software innovations. Each Claim 13 is directed to "[a] database of information stored in a fixed medium...wherein: each said tangible data element is linked to each said effect data element partially or wholly...wherein at least one of each said link between a tangible data element and an intangible data element data element is itself linked to at least one specific degree of performance."  This structure, both physical and logical, illustrates an example of the complex computer technology.  The text of the claim, the data storage and algorithmic manipulation of many sets and subsets of different types of data elements utilized in different ways, and selective linking between data elements, are all evidence that Claim 13 is directed to an improvement in computer functionality, and satisfies the statutory category of machine.

### 2. *The Asserted Claims Are Not Abstract Ideas: Step 2a*

The Supreme Court has identified just three exceptions to statutory patent eligibility: "laws of nature, natural phenomena, and abstract ideas." *Diamond*, 450 U.S. at 185  Google alleges the asserted claims are directed to an abstract idea. See ECF No. 27 at 7.  If the claims are directed to an abstract idea, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78-79).  But "there is no such single, succinct, usable definition or test...for[] what an 'abstract idea' encompasses." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir., 2016)  Therefore, courts use a decisional mechanism of examining earlier cases, "what prior cases were about, and which way they were decided." *Id.*  When evaluating patents directed to computer functionality, the Federal Circuit considers cases with similar technologies and has found eligibility "when somewhat facially-similar claims are directed to an improvement in computer functionality." *Id.* at 1300.

The Patents-in-Suit are directed to computer database technology.  Employing the directed-to inquiry, numerous courts have recently found comparable claims directed to eligible subject matter under § 101 of the Patent Act.  See *TecSec, Inc. v. Adobe Systems, Inc.*, 978 F.3d 1278 (Fed. Cir. 2020)(affirming district court's rejection of eligibility challenge at summary judgment where claim language and specification establish that claims are directed to improving a basic function of data-distribution in computers); *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1330 (Fed. Cir. 2020) (overruling district court ineligibility finding where patents offered improved method of operating a flow of data, and included a detailed recitation of the means for doing so); *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299,  (Fed. Cir. 2020) (district court erred in

10

denying motion for judgment as a matter law on eligibility where claim "purports to meet a challenge unique to computer networks, identifying disjointed connection flows in a network environment" and "[t]he claims detail how this is achieved in several steps."); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 918 F.3d 1368, 1375 (Fed. Cir. 2019) (affirming denial of eligibility claim at summary judgment where claims were not directed to generic steps required to collect and analyze data but to improving the function of the computer and computer networks by reciting a specific technique for improving such);  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) (affirming denial of judgment of matter of law where patent recites specific steps to accomplish what was not done in the industry prior to the patent); *Intellectual Ventures I, LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, 2018 U.S. Dist. LEXIS 212876 (E.D. Tex. Aug. 31, 2018) (denying motion to dismiss for ineligible subject matter where the patent specification and claims address an "existing problem in the art, namely that different types of data packets have different ideal quality of service ('QoS') settings, which results in suboptimal data flow when" and the claimed invention addresses this problem by classifying each type of data on a packet level prior to scheduling to optimize wireless data flow"); *Enfish*, 822 F.3d at 1336 (overturning summary judgment finding of §101 ineligibility where the district court found claims directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table" because the district court over simplified the claims that were "directed to an improvement in the functioning of a computer").

### 3. *The Asserted Claims Are Improvements in Computer Technology: Step 2b*

Even if an invention is directed to a law of nature, natural phenomenon, or abstract idea, it can still be patent eligible if it "effect[s] an improvement in [a] technology or technical field" such as purporting "to improve the functioning of the computer itself." *Alice*, 573 U.S. at 2350.  "[T]he claims in *Diehr* were patent eligible because they improved an existing technological process." *Id.*

11

at 2358. "Our conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases." *Enfish*, 822 F.3d at 1337

The asserted claims here are patent eligible for the reasons illustrated in Steps **1)** and **2a)**, and the claims also include inventive concepts. Technological problems that conventional databases were encountering at the time of the applications of the Patents-in-Suit, and which are cited in the specifications, include:

> "Reprogramming [was] almost always necessary to fully integrate the relationships" ('433 Patent, 1:44-45; '680 Patent, 1:45-46);

> "Existing database models [were] limited in the number of relationships that can be kept on line at any one time" ('433 Patent, 1:50-51; '680 Patent, 1:51-52);

> "Data [was] often duplicated with the same data elements being stored in multiple locations" ('433 Patent, 1:53-55; '680 Patent, 1:55-56); and

> "Presently available databases do not categorize data elements into specific categories with rules for storing and manipulating each type of data element." ('433 Patent, 2:29-31; '680 Patent, 2:30-32)

These are just some of the technological problems that were solved by the innovative approaches of the Patents-in-Suit.

For example, the patents-in-suit recite how one embodiment of the invention includes "a complete database management system that includes techniques for categorizing data elements, a format for storing data elements, a MINDBASE dictionary technique for automating the use of MINDBASE, routines for searching MINDBASE structures and routines for displaying and scrolling MINDBASE structures on a display device." ('433 Patent, 7:1-8; '680 Patent, 7:3-10). One approach of the patents-in-suit to solving the problems of conventional databases includes a system where "data structures are linked through data elements that they have in common. A traverse can

12

be made from any 'starting' data element in one of the inter-related structures to any desired 'destination' data element in any of the other inter-related structures." '433 Patent, 16:19-23; '680 Patent, 16:22-26.

The above recitations are just a couple of the technological improvements included in the Patents-in-Suit that solved contemporary database problems. Within the field of computer databases, the Patents-in-Suit stood out as technological innovators. Evident from the claim language and bolstered by the specification's teachings, the claimed inventions of the Patents-in-Suit achieved technological benefits over conventional databases.

### B. There Exists a Factual Dispute Regarding to What the Asserted Claims Are Directed.

In its First Amended Complaint, Mindbase alleges the Patents-in-Suit are patent-eligible and are directed to asserted improvements in computer technology. See ECF No. 22 ¶¶ 14, 17. The Specifications and Claims provide ample evidence of this computer invention, and the Complaint includes some of these examples. "The Patents-in-Suit depart from earlier approaches in database science to offer specific asserted improvements in the database industry." See ECF No. 22 ¶¶ 17. The Patents-in-Suit include new technologies in database integration, data relationships, online availability, and universal searching. See ECF No. 22 ¶¶ 16. Thus, Mindbase alleges the Patents-in-Suit are directed to technological innovations in the improvement of a computer.

Google alleges the Patents-in-Suit are directed to the abstract idea of "structuring data in the same manner as the human mind." See ECF No. 27 at p. 7. To support its allegation, Google picks out short phrases from the patent specifications, and then mischaracterizes the phrases to attempt to equate them, in Google's opinion, to an abstract idea. Google does not argue the claim language is an abstract idea; Google argues the claim language is equivalent to "structuring data in the same manner as the human mind" (*Id.*) and that structuring data in the same manner as the

human mind is an abstract idea. Therefore, there exists a dispute of fact here as to what the inventions of the Patents-in-Suit are directed. It is thus inappropriate to resolve this factual dispute in a Rule 12(b)(6) motion. "[P]atentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Aatrix Software, Inc.*, 882 F.3d at 1126. Accordingly, Google fails to present clear and convincing evidence that the Patents-in-Suit are directed to ineligible subject matter. For this reason alone, Google's ineligibility argument fails.

## II. MINDBASE ALLEGES PLAUSIBLE INFRINGEMENT CLAIMS.

According to Google, five factual assertions are required for a claim of direct patent infringement: "(1) ownership of the patent; (2) name of each defendant; (3) cite the patent allegedly infringed; (4) state how the defendant allegedly infringes; and (5) point to the sections of the patent law invoked." ECF No. 14 at 14-15 (quoting *Advanced Screenworks, LLC v. Mosher*, No. 2:19-cv-758-FtM-29MRM, 2020 WL 1188468, at *3 (M.D. Fla. Mar. 12, 2020).

Based on this standard, and taking the specific, non-conclusory factual allegations of the First Amended Complaint to be true, Mindbase adequately pleads claims for patent infringement. Mindbase adequately alleges ownership of the patent, names Google as the defendant, cites the patents that are infringed, states how the defendant allegedly infringes these patents, and points to the sections of the patent law invoked. *See* ECF No. 22 at ¶¶1-2, 9-13, 18-44.

### A. *Mindbase Offers Specific Factual Allegations of Infringing Conduct.*

In its Motion to Dismiss the infringement claims, Google asserts that Mindbase fails to allege how Google infringes the Patents-in-Suit. *See* ECF No. 14. This is a provably false characterization of Mindbase's allegations. In its First Amended Complaint, Mindbase identifies representative claims from the Patents-in-Suit, identifies the Google products that infringe these claims, and, using technological disclosures from Google's own webpages that show data structure

guidelines used by Google Search, Mindbase provides element by element allegations of how the Accused Services plausibly infringe the asserted claims. *See* ECF No. 22 at ¶¶1-2, 9-13, 18-44. For example, Mindbase alleges that "[t]he technology behind Google Accused Services includes a set of intangible data elements, said intangible data elements representing words and concepts which have no physical weight and cannot be weighed." *Id*. at ¶ 27. Mindbase makes similar factual allegations for each of the elements of the representative claims. *Id*. at ¶ 18-44. These are factually specific allegations that, if true, certainly render Mindbase's infringement claims plausible and place Google on sufficient notice of that infringement. Google's theory that Mindbase has failed to provide sufficient notice of infringement under *Twombly* hinges on the false assumption that the allegations set forth in paragraphs 18-44 of the First Amended Complaint are not specific, factual allegations as to how Google structures data in its Accused Services.

Without access to Google's source code, Mindbase relies on the admissions and implications from Google's own websites. "Pleading facts based upon information and belief when those facts are 'peculiarly within the possession and control of the defendant'...is therefore permissible." *Universal City Studios v. Nissim Corp.*, Case no. 14-81344-CIV-KAM, *7 (S.D. Fla. Mar. 12, 2015) "[T]he *Twombly* plausibility standard does not prevent a party from pleading facts based 'upon information and belief' where the belief stems from factual information that makes the inference of culpability plausible." *Id.* Mindbase's factually specific allegations include not only excerpts of Google statements, but also additional links to Google's own websites. *See* ECF No. 22 at ¶¶ 24, 36. These excerpts and links to specific webpages satisfy the requirement that the complaint "must contain direct or *inferential* allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis added).

The links and excerpts cited in the First Amended Complaint are treated as exhibits to a complaint would be, and "are part of the pleading 'for all purposes.' Fed. R. Civ. P. 10(c); *see Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir.1985) (per curiam) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion.")" *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) Google is a company full of technology experts; and providing them with the exact asserted claims and their own precise webpages of the accused technology more than sufficiently provides fair notice of the grounds of the patent infringement accusations here.

## B.    *The Factual Allegations of Infringing Conduct Comply with <u>Twombly</u>.*

Google theorizes that *Twombly* requires Mindbase—at the pleadings stage, without access to Google's source code—to allege not only which limitations of the representative claims are found in Google's Accused Services but also how the Accused Service include those claim limitations.  *See* ECF No. 27 at 15.  However, courts in this district have rejected this argument that *Twombly* changed the pleading requirements of Rule 8(a) as applied in patent infringement cases, as Judge Ryskamp explained:

> Moreover, the Rule 12(b)(6) pleading requirements for a complaint of infringement do not require a plaintiff to specifically include each element of party's claims against the alleged infringer.  To impose such a requirement would contravene the notice pleading standard, and would add needless steps to the already complex process of patent litigation.  Rather, a patentee need only plead facts sufficient to place the alleged infringer on notice.

*Vtrax Technologies Licensing, Inc. v. Siemens Communications, Inc.*, No. 10-CV-80369, 2010 WL 11452334, *2 (S.D. Fla. 2010) (internal quotation omitted) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 n.4 (Fed. Cir. 2007) and *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)); *Zamora Radio, LLC v. Last.fm Ltd.*, No. 09-CIV-20940,

16

at *8-9 (S.D. Fla. Jan. 37, 2010) (noting same and denying motion to dismiss infringement claim where complaint "contains enough detail and factual allegations to allow the defendants to answer the complaint and defend themselves."); *ArrivalSar S.A. v. Daniel F. Young, Inc.*, 11-20628-CIV-JORDAN, 2011 WL 13223520, *2 (S.D. Fla. June 13, 2011) (noting "a plaintiff need not allege a specific fact covering every element" as "[a]ll that is required is that the plaintiff allege facts to render plausible their claims.") (citing FED. R. CIV. P. 8(a)(2) and *Frazile v. EMC Mortg. Corp.*, 382 Fed. App'x 833, 836 (11th Cir. 2010)); *Sipco, LLC v. ADT Security Services, Inc.*, No. 11-80521-CV, 2011 WL 13228573 (S.D. Fla. October 3, 2011) (noting same and denying motion to dismiss where "Complaint asserts that Defendant is infringing on its Patents by using certain products that consist of and/or incorporate infringing wireless network systems, including without limitation those found in ADT's Pulse product line, in violation of 35 U.S.C.§ 271."); *see also Advanced Screenworks*, 2020 WL 1188468, at *3 ("Plaintiff need not prove its case at the pleading stage, but need only place the potential infringer on notice of what activity it is accused of infringing.").

The cases cited by Google do not deviate from this precedent. The plaintiff in *Blackberry Limited v. BLU Products, Inc.,* 16-23535-CIV-MORENO/O'SULLIVAN, 2017 WL 5004845, at *4(S.D. Fla. March 27 (2017), unlike Mindbase, failed to allege which claims of the patents at issue were infringed so "the defendant is left to guess as to which of the over 475 claims not specifically identified by number in the First Amended Complaint have been purportedly infringed by the defendant." *Id*. Google's reliance on *Advanced Screenworks*, 2020 WL 1188468, at *3, and *Global Tech Led, LLC v. Every Watt Matters, LLC*, No. 15-cv-61933-BLOOM/Valle, 2016 WL 6682015, at *2 (S.D. Fla. May 19, 2016), is equally misplaced. In those cases, the plaintiffs' allegations were limited to claims that defendants infringed by "making, using, offering to sell,

17

and selling" accused products. But in the case at bar, Mindbase has specifically alleged each element of representative claims that are found in the Accused Products whereby Google can admit or deny whether these limitations are found in the accused technology. The reliance on *Blue Water Innovations, LLC v. Fettig*, No. 18-60671-Civ-Scola, 2019 WL 1904589, at *2 (S.D. Fla. Mar. 8, 2019), fails for the same reason: the plaintiff in *Blue Water* failed to allege which claims were infringed. While the court in *Raptor, LLC v. Odebrecht Constr., Inc.*, No. 17-21509-CIV-AL-TONGA/Goodman, 2017 WL 3503399, at *4 (S.D. Fla. Jun. 22, 2017), did require an element by element analysis of the infringed claim, something the plaintiff in *Raptor* failed to offer, Mindbase has offered an element-by-element analysis of how Google structures data in a manner that infringes the representative claims.

In compliance with *Twombly*, Mindbase pleads factual content that allows this Court to draw the reasonable inference that Google is liable for the misconduct alleged. Google is thus on sufficient notice as to how it infringes the representative claims when data is structured in the Accused Services. Accordingly, Google's Motion to Dismiss the infringement claims fails.

## CONCLUSION

In conclusion, Google's interpretation as to what the asserted claims are directed creates a factual dispute that cannot be resolved on a Rule 12(b)(6) motion. For that reason alone, the motion fails. Additionally, the asserted claims here satisfy each step of the *Alice*/*Mayo* test, even though satisfying only a single step is required by the Supreme Court to find patent eligibility. The asserted claims are directed to a machine, specifically, to the improved functionality of a new type of computer database: Step **1**. The asserted claims are categorically similar to the patent-eligible claims in many other cases, such as in *Enfish* that were judged to be "directed to an innovative logical model for a computer database" (*Enfish*, 822 F.3d at 1330): Step **2a**. The asserted claims

describe in great detail exactly which technological problems the databases of that era faced, and exactly which technological approaches were applied to overcome those problems: Step **2b**.

For the reasons set forth above, Google's Motion to Dismiss should be denied in its entirety, because the asserted claims are either factually disputed or, regardless, are patent eligible, and the Plaintiff's Complaint alleges sufficient facts to establish that the Patents-in-Suit give Defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Alternatively, should the Court deem that any of the Counts asserted in Plaintiff's Complaint are insufficiently pled, Plaintiff requests leave to amend its Complaint.

Dated: February 22, 2021            Respectfully submitted,

*/s/ Alen H. Hsu*
Alen H. Hsu, Esquire
Florida Bar No. 62495
Anne R. Flanigan
Florida Bar No. 113889
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
1200 N. Federal Highway
Suite 312
Boca Raton, FL 33432
Telephone: (561) 835-2111
Email: ahsu@wsh-law.com
          aflanigan@wsh-law.com

James Iaconis, Esquire*
Texas Bar No. 24080954
Iaconis Law Office
P.O. Box 450473
Miami, FL 33245
Email: james.iaconis@iaconislaw.com


R. Terry Parker, Esquire*
Massachusetts Bar No. 569008
RATH, YOUNG and PIGNATELLI, P.C.
120 Water Street, Second Floor
Boston, MA 02109
Telephone: (603) 226-2600

Email: rtp@rathlaw.com

*Attorneys for Plaintiff*
*\*Admitted Pro Hac Vice*