UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-24742-BLOOM/Otazo-Reyes

MINDBASEHQ LLC,

    Plaintiff,

v.

GOOGLE LLC,

    Defendant.
_____/

## ORDER ON MOTION TO TRANSFER

**THIS CAUSE** is before the Court upon Defendant Google LLC's ("Defendant") Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). ECF No. [25] ("Motion"). Plaintiff MindbaseHQ LLC ("Plaintiff") filed a Response in Opposition, ECF No. [42] ("Response"), to which Defendant replied, ECF No. [45] ("Reply"). Moreover, on March 12, 2021, the Court held a hearing on the Motion, which was attended by counsel for each party. ECF No. [50]. The Court has reviewed the Motion, all opposing and supporting submissions, the arguments presented at the hearing, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

    **I. BACKGROUND**

Plaintiff initiated this patent infringement action on November 17, 2020. ECF No. [1]. On January 11, 2021, Plaintiff filed a First Amended Complaint dismissing the originally named defendant and asserting its patent infringement claims against Defendant Google LLC. ECF No. [22] ("Amended Complaint"). The Amended Complaint asserts two separate counts of patent infringement for two different patents Plaintiff owns, *see generally id.*, alleging as follows:

> 18. Google has directly infringed claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the below accused database goods and/or services in this District and elsewhere in the United States that include the apparatus and methods claimed in the Patents-in-Suit.
> 19. Infringing Google products include the Google internet search and Google Ads (collectively, "the [] Accused Services").

*Id.* ¶¶ 18-19.

Defendant now files the instant Motion[1] seeking to transfer this action to the United States District Court for the Northern District of California, arguing that the material facts in this case weigh strongly in favor of transfer because this action presents no significant ties to this District, the Southern District of Florida. Plaintiff responds that its choice of forum is entitled to considerable deference and that transferring this action to California would improperly and unjustly shift the cost and inconvenience of litigating in a particular forum onto Plaintiff.

## II. LEGAL STANDARD

The transfer statute, 28 U.S.C. § 1404(a), which embodies a codification and revision of the *forum non conveniens* doctrine, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1188-89 (S.D. Fla. 2007) (citing *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)). Indeed, "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by

---

[1] Defendant has also filed a Motion to Dismiss, ECF No. [27], and Plaintiff has filed a Motion for Leave to File a Second Amended Complaint, ECF No. [51]. However, because the Court finds that the instant Motion to Transfer is due to be granted, it declines to address these remaining motions.

considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The statute grants broad discretion to the district court. *See Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (stating that the "standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court" (citation omitted)); *see also Piper Aircraft Co.*, 454 U.S. at 253 (noting that "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*" (citation omitted)); *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1275 (S.D. Fla. 2011) ("The Court has broad discretion in determining whether these factors suggest that transfer is appropriate.").

In determining the appropriateness of transfer, courts employ a two-step process. *See Osgood*, 981 F. Supp. 2d at 1263 (citing *Abbate v. Wells Fargo Bank, Nat'l Ass'n*, No. 09-62047-CIV, 2010 WL 3446878, at *4 (S.D. Fla. Aug. 31, 2010)); *Precision Fitness Equip., Inc. v. Nautilus, Inc.*, No. 07-61298-CIV, 2008 WL 2262052, at *1 (S.D. Fla. May 30, 2008) (citing *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003); *Jewelmasters, Inc. v. May Dep't Stores*, 840 F. Supp. 893, 894-95 (S.D. Fla. 1993); *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19 (1960)). First, the district court is tasked with determining whether the action could have been pursued in the venue to which transfer is sought. *See Osgood*, 981 F. Supp. 2d at 1263 (citing *Abbate*, 2010 WL 3446878, at *4). With regard to this first prong, an action "might have been brought" in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court. *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citing 15 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3845 (1976)).

Second, "courts assess whether convenience and the interest of justice require transfer to

the requested forum." *Id.* (citation omitted); *see also Abbate*, 2010 WL 3446878, at *3 ("The [Court of Appeals for the] The Eleventh Circuit has recognized that district courts have broad discretion in determining whether to transfer a case to another district for the convenience of the parties and witnesses, and in the interests of justice." (citing *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988)))). In analyzing this second prong, courts apply several factors weighing the various public and private interests, *see Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1275-76, including "(1) convenience of the parties; (2) convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to secure the presence of unwilling witnesses; (5) the cost of obtaining the presence of witnesses; and (6) the public interest," *Cellularvision Tech. & Telecomms., L.P.*, 508 F. Supp. 2d at 1189 (citing *Thermal Techs., Inc.*, 282 F. Supp. 2d at 1376).

### III. DISCUSSION

Defendant now seeks transfer of this patent infringement action to the Northern District of California, arguing that the center of gravity and the majority of the public and private interest factors weigh in favor of transfer. Although Plaintiff opposes the Motion, the parties do not dispute the fact that this action could have been pursued in the Northern District of California and that venue would be proper in that District. *See* ECF No. [50] at 6:14-16.[2] Likewise, at the hearing on this Motion, Defendant stated that it would be amenable to accepting service in California and would not challenge service. *Id.* at 13:4-15; *see also Osgood*, 981 F. Supp. 2d at 1263 (stating that the first part of the two-step analysis in determining the appropriateness of transfer involves assessing whether the action could have been pursued in the venue to which transfer is sought

---

[2] *See Windmere Corp.*, 617 F. Supp. at 10 ("An action 'might have been brought' in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court.").

(citing *Abbate*, 2010 WL 3446878, at *4)). Accordingly, the question before the Court is "whether convenience and the interest of justice require transfer to the requested forum," *Osgood*, 981 F. Supp. 2d at 1263, and the Court's transfer analysis in this case is focused on the weight of the public and private interest factors. Defendant, as the movant, bears the burden of demonstrating entitlement to transfer. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

In analyzing whether a defendant has sufficiently demonstrated that transfer is appropriate, a court considers the following private and public interest factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1275-76 (quoting *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002)) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). "Ultimately, transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)). In the instant action, the Court is persuaded that the relevant factors weigh strongly in favor of transfer to the Northern District of California.

A. **Private Interest Factors**

Traditionally, a plaintiff's choice of forum is accorded considerable deference. *See In re Ricoh*, 870 F. 2d at 573 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). However, "where the operative facts underlying the cause of action did not occur within the forum chosen

by the Plaintiff, the choice of forum is entitled to less consideration." *Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1276 (quoting *Windmere*, 617 F. Supp. at 10).

Indeed, district courts often grant motions to transfer venue in patent infringement cases when the plaintiff has chosen a forum that is not the "center of gravity of the accused activity." *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *2-3 (S.D. Fla. Feb. 23, 2009) (noting that "[i]n patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity," and holding that a court may "disregard plaintiff's choice of forum in cases involving claims of patent infringement"). For patent infringement cases, the center of gravity is the jurisdiction "where the accused [services were] designed and developed." *Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1276 (quoting *Trace-Wilco, Inc.*, 2009 WL 455432, at *2-3). Moreover, "[t]he district court 'ought to be as close as possible to the milieu of the infringing [services] and the hub of activity centered around [their research and development].'" *Trace-Wilco, Inc.*, 2009 WL 455432, at *2 (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983)) (granting a motion to transfer when "all development, testing, research, and production" along with "virtually all marketing and sales decisions were made" in the transferee forum, and "only some very limited sales activity occurred in this district."). In *Trace-Wilco, Inc.*, the court further explained that "in intellectual property infringement suits, which often focus on the activities of the alleged infringer, its employees, and its documents . . . the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Id.* at *3 (quoting *Amini Innovation Corp. v. Bank & Est. Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007)); *see In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) ("While the sale of an accused [service] offered nationwide does not give rise to a substantial interest in any single venue,

if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.").

One of the most significant points of dispute in this case is whether the Court should apply the center of gravity test, as it has previously done in a similar patent infringement action, *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219 (S.D. Fla. 2016). *See also Trace-Wilco, Inc.*, 2009 WL 455432, at *1. Indeed, Defendant takes the position that the center of gravity test applies here and that the nucleus of relevant facts and witnesses are all based out of California. In particular, Defendant argues that none of the research and development of the Accused Services occurred in this District, and that the most significant portion of the research and development occurred at Defendant's global headquarters in Mountain View, California. Similarly, Defendant represents that the engineers who designed the Accused Services and most of the key employee witnesses who have knowledge about the Accused Services are located in California.[3] Defendant notes that the only connection between the Accused Services and this District is that Defendant has one small office in this District, it offers the Accused Services nationwide[4]—including within this District—and that Plaintiff is a Florida limited liability company that is based in Florida and operates in this District. Moreover, Defendant asserts that there appear to be, at most, only two individuals within this District with knowledge relevant to this case—Gary Sharp, Plaintiff's co-

---

[3] Notably, of Defendant's roughly 84,500 U.S.-based employees, 59% of them—i.e., over 50,000 individuals—are based in the Northern District of California. *See* ECF No. [25-1] ¶ 3. Moreover, 70% of Defendant's employees who work on Google internet search and 60% of Defendant's employees who work on Google ads are located within the Northern District of California. *Id.* ¶ 5. In contrast, Defendant's only office in Florida employed 57 total employees at the time the instant Motion was filed, none of whom Defendant believes has relevant knowledge of the research, development, design, engineering, or marketing of the Accused Services. *Id.* ¶¶ 7-8.

[4] At the hearing on this Motion, Defendant's counsel explained that the Accused Services are, in fact, offered globally, and that there is no particular version of these Accused Services that is offered solely in Florida. ECF No. [50] at 8:25-9:3; *see also* ECF No. [25] at 6 n.3.

founder, CEO, co-owner, and the co-developer for the patents-in-suit, and James Modla, Plaintiff's co-founder and manager. Plaintiff responds that the development of the patents-in-suit occurred in Florida, the infringing acts occurred within this District, and that transfer would impose undue financial hardship on Plaintiff, which lacks the resources to litigate this case in California with new counsel and to cover the travel expenses associated with proceeding in the Northern District of California. Although Plaintiff also noted that Mr. Sharp and Mr. Modla are elderly and that requiring them to travel for this litigation would pose significant risks to their health, Defendant's counsel made it clear at the hearing that Defendant would not oppose allowing Mr. Sharp and Mr. Modla to appear and participate in this case by video conference or telephone. *See* ECF No. [50] at 12:15-13:2.

Upon review of the facts in this case, the Court agrees with Defendant that the reasoning in *Carucel Investments, L.P.* is dispositive to the center of gravity issue. Critically, and as numerous courts within this District have emphasized, "the center of gravity is the jurisdiction 'where the *accused* [*services* were] designed and developed.'" *Carucel Invs., L.P.*, 157 F. Supp. 3d at 1225 (emphasis added) (quoting *Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1276) (citing *Trace-Wilco, Inc.*, 2009 WL 455432, at *2-3). Thus, the Court disagrees with Plaintiff's contention that the relevant center of gravity inquiry should focus on where the *patents-in-suit* were designed and developed. *See Carucel Invs., L.P.*, 157 F. Supp. 3d at 1225; *Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1276; *Trace-Wilco, Inc.*, 2009 WL 455432, at *2-3. Moreover, Plaintiff's reliance on two cases—*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 8:06-cv-1746-T-27MAP, 2006 WL 3333718, at *1 (M.D. Fla. Nov. 16, 2006), and *Trinity Christian Center of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322 (M.D. Fla. 2010) ("*Trinity Christian*")— that the relevant inquiry in the center of gravity analysis is the jurisdiction where the patents-in-suit were

8

developed is belied by the facts of each case. To the contrary, *Bookworld Trade, Inc.* was a breach of contract action that did not address whether the center of gravity inquiry should focus on the jurisdiction where the patents-in-suit were developed or the jurisdiction where the accused infringing services were developed. 2006 WL 3333718, at *2. Likewise, *Trinity Christian* involved a trademark dispute where the plaintiff established that it had a substantial and extensive presence in Florida and that the injury in Florida would be significant, which the court found to be determinative. *See* 761 F. Supp. 2d at 1326-1330 (discussing the private interest factors in light of the plaintiff's abundant ties to Florida and concluding that these factors weighed heavily in the plaintiff's favor). Again, however, the court did not address the center of gravity test, nor did it discuss the relevant point of focus in a patent infringement action. As such, the Court finds these cases to be inapposite to the current issue at hand and it therefore sees no reason to depart from its previous ruling in *Carucel Investments, L.P.*, which directly addressed the applicability of the center of gravity test in a patent infringement action.

Moreover, the majority of the research, design, and development of the allegedly infringing services occurred in California, where Defendant maintains its global headquarters and where the majority of its relevant personnel are employed. Equally significant is the fact that none of Defendant's 57 Florida-based employees were involved in the research, development, design, engineering, or marketing of the Accused Services. Thus, aside from Plaintiff's two co-founders, who Defendant agrees may appear remotely in all California-based proceedings in this matter, the significant majority of the witnesses with potentially relevant knowledge of the Accused Services and their development and design are located in the Northern District of California. Similarly, any additional relevant evidence regarding the Accused Services that is not in an electronic format is likely to be located in California, where these services were designed, developed, and engineered.

Additionally, although Plaintiff itself has ties to Florida, and its two co-founders are longtime residents of Florida, Plaintiff was formed in 2013 and its Florida connection is therefore of a more recent vintage. *See* ECF No. [42-1] ¶ 3.[5] As a result, Plaintiff itself did not suffer the alleged harm resulting from the infringing acts for a large part of the relevant time period in this case, and the allegedly infringing acts were certainly not localized to Florida or the Southern District during this period. *See Carucel Invs., L.P.*, 157 F. Supp. 3d at 1226. Thus, aside from Mr. Sharp and Mr. Modla, no other key witnesses in this case appear to reside in this District. Rather, the individuals responsible for the development and creation of the Accused Services, and, therefore, those with the most knowledge of the allegedly infringing functionalities, reside in Northern California. *See, e.g.*, *Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, 2015 WL 224952, at *4 (S.D. Fla. Jan. 15, 2015).[6] Thus, the convenience-of-witnesses factor weighs heavily in favor of transfer here. Furthermore, the issuance of subpoenas and the power to enforce these witnesses' attendance at trial is vested in the Northern District of California. This District lacks that authority.

Plaintiff maintains that there are substantial ties between the Southern District of Florida and the claims of infringement alleged in this case because the Accused Services, which Plaintiff does not dispute are available nationally, are also offered in Florida. However, "[t]he sale of an

---

[5] The patents-in-suit in this case were issued in 2003. *See* ECF No. [23].

[6] Notably, the Court of Appeals for the Federal Circuit has expressly rejected the argument that the presence of some witnesses outside of the proposed transferee forum somehow defeats witness convenience arguments. In *In re Genentech, Inc.*, the court disagreed "with the district court's rigid assessment," that "this factor should only favor transfer if it will be more convenient for all of the witnesses. . . . Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer." 566 F.3d 1338, 1345 (Fed. Cir. 2009). Further, in an analogous case, another court within this District has likewise found that a plaintiff's limited number of in-forum witnesses would not preclude transfer where a substantial portion of defendant's witnesses were located in the Northern District of California. *See Rothschild Digit. Media Innovations, LLC v. Sony Comp. Ent. Am. LLC*, No. 14-cv-22134 (S.D. Fla. Aug. 28, 2014), ECF No. [22].

accused [service] offered nationwide does not give rise to a substantial interest in any single venue." *Carucel Invs., L.P.*, 157 F. Supp. 3d at 1227 (quoting *Game Controller Tech. LLC v. Sony Comp. Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. Jan. 10, 2014) ("*Game Controller*")). Indeed, the allegations that Defendant offers the Accused Services in Florida make this District no more unique than any other federal district, because the Accused Services are available nationwide. In addition, in *Game Controller*, the Court rejected the very argument that Plaintiff asserts here, i.e., that the defendant offering "the accused [services] in this District is sufficient to establish a locus of operative facts in the Southern District of Florida." 994 F. Supp. 2d at 1275; *see also Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1192 (S.D. Fla. Apr. 17, 2007) ("Plaintiffs have demonstrated that at least [some Defendants] have conducted business in Florida. However, Plaintiff alleges that Defendants have committed acts of infringement not just in the Southern District of Florida, but 'throughout the United States.' . . . Even though some of Defendants' accused infringement activities are occurring in Florida, the activities of the Defendants in Florida are directed from Arkansas. Overall, it appears that the connection to Arkansas is stronger."); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (holding that nationwide sales gave the citizens of plaintiff's chosen forum "no more or less of a meaningful connection to this case than any other venue").

Furthermore, with regard to Plaintiff's alleged financial hardship that will result if it is required to hire new counsel and to litigate this matter in California, the Court notes that Plaintiff currently employs counsel from three different law firms, and two of its attorneys have been admitted *pro hac vice* because they are licensed in Texas and Massachusetts. Thus, the Court sees no reason why Plaintiff could not secure local counsel in California upon transfer. Moreover, it would be overly burdensome to require each of the California-based witnesses to travel thousands

of miles to this District, especially where Defendant's counsel has indicated that Defendant would not oppose Plaintiff's two Florida-based witnesses to appear remotely. Plaintiff is correct in pointing out that Defendant—one of the largest publicly traded corporations ever to exist—likely has more financial resources at its disposal than Plaintiff, which is a small, two-member company. However, while Plaintiff is not a large, publicly traded company, it is a corporate plaintiff, not an individual. *See Carucel Invs., L.P.*, 157 F. Supp. 3d 1227-28; *see also Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000) (denying motion to transfer venue to New York in case brought by Hawaii resident in home forum against New York newspaper); *see also Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994) (denying motion to transfer venue based on the means of the parties where individual plaintiffs were suing a large corporation). Although the Court is certainly sympathetic to any potential additional cost to Plaintiff, the Court is not persuaded that the monetary obligation or inconvenience to a corporate plaintiff, and/or its founders, weighs in favor of denying transfer. *See Carucel Invs., L.P.*, 157 F. Supp. 3d 1227-28.

Thus, the Court concludes that the relevant private interests in this case strongly favor transfer to California.

**B. Public Interest Factors and the Interests of Justice**

Next, the Court considers, based on the totality of the circumstances, the interests of justice, as well as several other public interest factors, such as

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Trace-Wilco, Inc.*, 2009 WL 455432, at *2 (quoting *Piper Aircraft*, 454 U.S. at 258). An examination of these interests reveals that they lean in favor of transfer, albeit perhaps less starkly than the private factors.

Plaintiff contends that the Court should assign great significance to maintaining this action here, in Plaintiff's home forum. However, other than Plaintiff's existence in the State of Florida, and the Floridian citizenship of Plaintiff's co-founders, this matter does not present circumstances in which Florida has a substantial interest. Indeed, the burden imposed upon the Northern District of California's citizens is light, given that California has a substantial interest in adjudicating controversies involving a corporation employing thousands of Californian residents. Further, patent infringement cases are governed by federal law, and all federal courts are presumed to be equally familiar with patent law. *See, e.g.*, *Trinity Christian*, 761 F. Supp. 2d at 1329-30 (concluding that both districts were equally knowledgeable regarding governing federal law); *Cento Grp., S.P.A. v. Oroamerica, Inc.*, 822 F. Supp. 1058, 1062 (S.D.N.Y. 1993) ("Cento has made only one claim based on federal patent law, and presumably both courts in New York and California are equally likely to be familiar with federal patent law."). Thus, problems related to the governing law are not created by transferring this matter to the Northern District of California.

Ultimately, the public interest factors and the interests of justice favor transfer. The center of development of the allegedly infringing services, related parties and key witnesses, and the community with the most significant interest in this matter is simply not the Southern District of Florida. *See Trace-Wilco, Inc.*, 2009 WL 455432, at *4 (finding that transfer would serve the interests of justice where the center of the accused activity occurred in the transferee district); *see generally ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, No. 13-80239-CIV, 2013 WL 9827411, at *3 (S.D. Fla. June 14, 2013) (citing 15 Wright, Miller & Cooper, *Federal Practice*

*and Procedure: Jurisdiction and Related Matters* § 3854 at 246-47 (3d ed. 2007) ("[A] number of federal courts have considered [the interests of justice] factor decisive – outweighing the other statutory factors")).

Balancing the public and private interests, the Court finds that transfer to the Northern District of California is warranted. The alternative forum is not only an appropriate forum, but significantly more appropriate, given the fact that the core of activity surrounding the design, development, and production of the Accused Services occurred there. As a result, many of the witnesses called to testify in this matter will likely hail from California. In contrast, although Plaintiff is a Florida citizen, the only other unique tie between the instant case and Florida is two witnesses that Plaintiff expects to call from Florida, Mr. Sharp and Mr. Modla. Neither the number of witnesses that exist outside of both forums nor the offering of Accused Services nationwide, including in Florida, persuades the Court that Florida is the more suitable venue. Overall, California has the strongest connection to this case and transfer is therefore warranted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [25]**, is **GRANTED**. The Clerk of Court is directed to **TRANSFER** this case to the United States District Court for the Northern District of California. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**. The Clerk of Court is directed to **CLOSE** this case.

Case No. 20-cv-24742-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 12, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record